194 N.J. Super. 96 (1984)
476 A.2d 304
JOSE RAMOS AND CARMEN RAMOS, PLAINTIFFS-RESPONDENTS,
v.
BROWNING FERRIS INDUSTRIES OF SOUTH JERSEY, INC., DEFENDANT-THIRD-PARTY PLAINTIFF-APPELLANT,
v.
LAMINATING CORPORATION OF AMERICA, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1984.
Decided May 29, 1984.
*99 Before Judges BISCHOFF, PETRELLA and BRODY.
*100 Thaddeus J. Hubert, III argued the cause for appellant (Hoagland, Longo, Oropollo & Moran, attorneys; William E. Russell on the brief).
Seymour Margulies argued the cause for respondents Jose Ramos and Carmen Ramos (Margulies, Margulies & Wind, attorneys; Mr. Margulies and Jack Jay Wind on the brief).
Robert F. Colquhoun argued the cause for respondent Laminating Corp. of America (Colquhoun & Colquhoun, attorneys; Robert F. Colquhoun on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Plaintiff was injured in the course of his employment while wheeling a 400-pound drum of solid waste to a large "roll-off" container in his employer's yard. The drum fell against his leg when he tripped over a deep rut in the soil near the container. Recently fallen snow covered the rut.
In plaintiff's personal injury action a jury attributed 25% negligence to him and 75% to defendant Browning Ferris Industries, Inc. (BFI), a solid waste hauler that leased the container to plaintiff's employer, third-party defendant Laminating Corporation of America (LCA). Under its lease agreement with LCA, BFI regularly sent a truck to the yard to empty the container. A mechanism on the truck pulled the container along the ground and onto the truck. A jury could have found that during this operation the wheels of BFI's truck or the wheels and guidetracks on the bottom of its container created the rut that caused the accident. Judgment was entered against BFI in the amount of $307,500.
In its third-party complaint BFI claimed the benefit of an indemnification provision in its lease agreement wherein LCA agreed to defend and hold BFI harmless from a claim such as plaintiff's. Before trial BFI and LCA moved for summary judgment regarding the enforceability of the indemnification *101 provision. The trial court denied BFI's motion but granted LCA's.
BFI appeals from that judgment and the judgment recovered against it by plaintiff. Its principal arguments regarding plaintiff's judgment are that there was no evidence of its negligence, it owed plaintiff no duty and the trial judge should have had the jury include in its apportionment a percentage for the negligence of LCA. Plaintiff's judgment is affirmed. LCA's judgment is reversed.
We turn first to the indemnification issue. The provision in question reads in pertinent part as follows:
[LCA] acknowledges that it has care, custody and management of [the container] owned by [BFI] and accepts responsibility for [it] and its contents except when it is being physically handled by employees of [BFI]. Therefore, [LCA] expressly agrees to defend, indemnify and hold harmless [BFI] from and against any and all claims for loss of or damage to property, or injury to or death of person or persons resulting from or arising in any manner out of [LCA's] use, operation or possession of the [container] furnished under this Agreement.
The trial judge interpreted this provision "as intended only to require [LCA] to indemnify [BFI] against those losses which result from [LCA's] negligence in connection with the possession or use" of the container. We disagree.
In a commercial setting parties are free to negotiate the allocation of tort liability risks regardless of fault. Berry v. V. Ponte & Sons, 166 N.J. Super. 513, 517-518 (App.Div. 1979), certif. den. 81 N.J. 271 (1979). While a court will look closely at such an agreement when it purports to indemnify the indemnitee for his own negligence, the agreement will be enforced if that is what it unequivocally provides. Cozzi v. Owens Corning Fiber Glass Corp., 63 N.J. Super. 117, 121 (App.Div. 1960).[1] There is no ambiguity or uncertainty here. *102 LCA agreed to indemnify BFI in all instances but one: where the harm is caused "when the [container] is being physically handled by the employees of [BFI]." The present case does not fall within the exception. Indeed the circumstances of this case prove the merit of resolving by agreement whether BFI or LCA should bear the risk. The creation of dangerous ruts appears to be an inherent part of the operation whenever a container is placed on soil. The indemnification provision eliminates uncertainty between the contracting parties over whether ultimate liability between them will rest on BFI for creating the hazard, on LCA for not correcting it or on both.
LCA contends that even if the indemnification agreement is generally enforceable, it should not be enforced where the injured party is its employee because of its immunity from tort liability under the Workers' Compensation Act. N.J.S.A. 34:15-8 provides that coverage under the act "shall be a surrender" by an employee of his "rights to any other method, form or amount of compensation or determination thereof than as provided in this article...." An employer may be made to respond indirectly for the damages recoverable by an injured employee beyond his workers' compensation liability, on principles of express or implied indemnification. Hagen v. Koerner, 64 N.J. Super. 580, 584 (App.Div. 1960). That view prevails in nearly every state that has considered the question. See, e.g., Whittle v. Pagani Bros. Const. Co., Inc., 383 Mass. 796, ___, 422 N.E.2d 779, 781-782 (Sup.Jud.Ct. 1981), and other cases collected at Annotation, "Modern status of effect of state workmen's compensation act on right of third-person tortfeasor to contribution or indemnity from employer of injured or killed workman," 100 A.L.R.3d 350, 380 (1980).
LCA urges that we remand plaintiff's tort claim for a new trial if we reverse the summary judgment it obtained *103 against BFI in the third-party action. According to LCA, it was "precluded" from defending plaintiff's claim at trial. Far from being precluded, LCA was sued by BFI for the express purpose of compelling LCA to defend plaintiff's claim. LCA wrongfully rejected its obligation and right to do so. Plaintiff need not risk losing his judgment because of LCA's breach. The judgment is conclusive against LCA. In Scaglione v. St. Paul-Mercury Indemnity Co., 28 N.J. 88, 104-105 (1958), the Court said:
[U]nder the doctrine of res judicata a judgment may be conclusive against one who is liable over to the judgment debtor in respect to the cause of action adjudicated, or one derivatively responsible to the judgment creditor, at least when there has been notice to the third party of the prior action and an opportunity to defend afforded. The principal applies to indemnitors, sureties and guarantors.
This common-law "vouching-in" rule is codified in Evid.R. 63(21). We also note that plaintiff's claim has been fully and vigorously defended by BFI.
We next turn to plaintiff's negligence claim. BFI argues that there was no evidence of its negligence, it had no duty to plaintiff and the judge erred in refusing to have the jury specifically assess the comparative negligence of LCA. We find no merit to these arguments.
The jury could have found that BFI knew or reasonably should have known that placing its container on soil would create ruts near the container that would be a tripping hazard for LCA employees who were using it. BFI's assistant operations manager testified that before the accident he inspected the site because his driver complained that his truck tended "to sink" in mud around the container. There was a safer "large concrete pad" that could have been used but LCA did not want to clear a path in the yard so that BFI trucks could reach it.
The manager testified that "due to the placement of the drums, pallets, and so on, I determined there really, practically, was no other place we would send it except where it was." He acknowledged that if a customer asked him to move a container, he would refuse to do so if the new location was not safe. *104 The jury could have found that BFI acted unreasonably in not insisting on a safer location for the container or in failing to reduce the risk of dangerous ruts by spreading and compacting or advising LCA to spread and compact "quarry blend bluestone" over the soil near the container. Plaintiff's expert testified that bluestone is used for that purpose.
In Goldberg v. Housing Auth. of Newark, 38 N.J. 578 (1962), the question was whether the owner of an extensive housing project had a duty to provide police protection to a deliveryman who was beaten and robbed while delivering milk to a tenant. The Court explained the concept of duty as follows:
The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. [Id. at 583 (emphasis in original)]
Applying the Goldberg test, we concluded that the installer of telephone equipment in an office complex owed a duty to its customers' employees to take reasonable precautions against installing wires in a way that created a tripping hazard. Essex v. New Jersey Bell Telephone Company, 166 N.J. Super. 124 (App.Div. 1979).
After Essex was decided the Supreme Court in Trentacost v. Brussel, 82 N.J. 214 (1980), expanded somewhat the scope of tort duty. The Court held that a landlord had a duty to provide a secure lock on the front entrance of an apartment building to protect a tenant who was mugged in the hallway. The Court gave added emphasis to the element of foreseeability in determining whether there is a duty. "Foreseeability of harm, not the fact of another's intervention, is the crucial factor...." Id. at 223. Here it may be said that foreseeability of harm, not LCA's failure to maintain its yard, is the crucial factor. BFI owed plaintiff a duty of reasonable care and whether BFI discharged that duty was properly left to the jury.
BFI next raises an issue on which there is no clear appellate court guidance in New Jersey and some confusion and *105 uncertainty expressed in a Law Division opinion. BFI contends that the judge erred in refusing to have the jury include LCA in their assessment of comparative negligence even though LCA is immune under the Workers' Compensation Act and therefore cannot be compelled to contribute to the payment of plaintiff's judgment. BFI does not allege prejudice and it is hard to see how there would be any. Nevertheless, BFI claims that omitting an immune employer from the verdict is unfair and that view is also expressed in Jarrett v. Duncan Thecker Associates, 175 N.J. Super. 109 (Law Div. 1980).
There are two misconceptions that fuel this sense of unfairness. One is an assumption that including the employer's percentage of negligence in the verdict would reduce only the third party's percentage. Putting aside for the moment the inapt reference to an employer's "negligence," where the negligence of three parties is being apportioned, the percentage assigned to each does not affect the relative (comparative) negligence of the other two. Having the trier of fact assign a percentage to the employer, would reduce the percentages assigned to both the third party and the plaintiff leaving them with the same percentages of comparative negligence vis-a-vis each other that they would have if the employer's percentage had been omitted.
This calculation is demonstrated in Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548 (1980), where the jury assessed plaintiff 41% of the negligence, one defendant 30% and the other 29%. After holding that negligence was not legally chargeable to the plaintiff and should have been omitted from the jury's allocation, the Court simply adjusted the defendants' percentages to 50.8% and 49.2%. Id. at 570.
The other misconception is that by not giving the employer's "negligence" to the trier of fact, the third party is deprived of the benefit of the employer's conduct as a circumstance to consider in judging the reasonableness of the third party's conduct. This is not so where, as here, the third party *106 is charged with negligence.[2] The jury was free to consider the reasonableness of BFI's claimed reliance on LCA to maintain the safety of the area around the container and the offsetting fact that BFI through its driver was aware that LCA had done nothing to correct the dangerous condition. The trial judge, however, properly excluded the indemnification agreement as evidence that BFI was not negligent. Protection through indemnification is not a license to cause harm with impunity and may not be considered as a circumstance that reduces a tortfeasor's negligence. See Doloughty v. Blanchard Const. Co., 139 N.J. Super. 110, 122 (Law Div. 1976).
We reject the argument that a trier of fact can better compare the negligence of a plaintiff with that of the third party if it also assigns a percentage of negligence to the immune employer. A truer verdict is more likely to be returned where the fact finder's attention is ultimately fixed on the conduct of the parties who will be affected by the verdict. Of course, in cases where the judgment cannot be properly molded without assessing the percentage of negligence of a tortfeasor who settled, it is necessary for the fact finder to make such an assessment even though the settling tortfeasor will not be affected by the verdict. Cartel Capital Corp. v. Fireco of New Jersey, supra, 81 N.J. at 569; Tefft v. Tefft, 192 N.J. Super. 561, 565-567 (App.Div. 1983). With that necessary exception there is no more reason to have a fact finder assign a percentage of negligence to someone who is not affected by the verdict than to assign a percentage of negligence to acts of God (such as the snow in this case) or a myriad of other causative factors that may have contributed to the happening of an accident.
*107 BFI urges us to follow Connar v. West Shore Equipment of Milwaukee, 68 Wis.2d 42, 227 N.W.2d 660 (1975), where the Wisconsin Supreme Court ruled that an employer's "negligence" should be given to the jury for the following reason:
[A] jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tort-feasors either by operation of law or because of a prior release. [Id. at 45, 227 N.W.2d at 662]
The Court based its ruling on an earlier case in which it ruled that the negligence of a defendant who settled is to be included in the jury's allocation of total negligence.
We disagree with the result in Connar for reasons already expressed and for the added reasons that in New Jersey an immune employer is not a tortfeasor, Schweizer v. Elox Div. of Colt Industries, 70 N.J. 280, 288 (1976), and, unlike the Wisconsin comparative negligence statute, ours requires the trier of fact to determine "[t]he extent, in the form of a percentage, of each parties' [sic] negligence." N.J.S.A. 2A:15-5.2(b) (emphasis added). By that provision our Legislature expressed its intent to limit the task of the trier of fact to determining the percentages of negligence of only those persons, necessarily parties, whose percentages must be known in order to mold the judgment. The employer being immune, it cannot be a party to a negligence action. LCA is a party here only with respect to BFI's separate and distinct claim against it for contractual indemnification.
Finally we are satisfied that the judge did not abuse his discretion in finding plaintiff's expert qualified to testify as such. The expert's testimony had the capacity to be helpful to the jury. See Hudgins v. Serrano, 186 N.J. Super. 465, 473-476 (App.Div. 1982).
Plaintiff's judgment against BFI is affirmed. LCA's summary judgment against BFI and the order denying BFI's motion for summary judgment against LCA are reversed.
NOTES
[1] The agreement here predates the December 3, 1981 effective date of N.J.S.A. 2A:40A-1 which renders unenforceable certain indemnification agreements other than insurance contracts issued by an authorized insurer. We express no opinion as to whether an agreement such as the one here would be enforceable under that statute.
[2] Where a third party is charged with product liability, it is not relieved of liability because of its expectation that the employer would render safe its unsafe industrial machine. Bexiga v. Havir Manufacturing Corp., 60 N.J. 402, 410 (1972).