209 N.J. Super. 543 (1986)
508 A.2d 264
ANA RIVERA, SURVIVING SPOUSE OF JOSE A. RIVERA, DECEASED, AND GUARDIAN AD LITEM OF ALBERTO RIVERA, A MINOR, PLAINTIFF-RESPONDENT,
v.
WESTINGHOUSE ELEVATOR COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1986.
Decided May 1, 1986.
*544 Before Judges MICHELS, DEIGHAN and STERN.
Mary Adele Hornish argued the cause on behalf of appellant (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys).
Peter M. Schirmer argued the cause on behalf of respondent (Williams & Schirmer, attorneys).
The opinion of the court was delivered by STERN, J.S.C., (temporarily assigned).
Defendant Westinghouse Elevator Company appeals from a judgment of the Law Division entered on a jury verdict awarding plaintiff Ana Rivera damages in the sum of $150,000 plus interest. Defendant contends that: (1) "[p]laintiff did not establish a cause of action in negligence by which defendant Westinghouse can be found 100% liable for the death of Jose Rivera"; (2) "[t]he cumulative effect of the trial court's errors in admitting and excluding evidence resulted in a verdict which was a miscarriage of justice and against the weight of the evidence", and (3) "[t]he charge to the jury on concurrent negligence constituted reversible error".
Jose Rivera had been employed as a maintenance worker at City Federal Savings and Loan (City Federal) since 1971. On January 19, 1981 he and three co-workers were directed by their supervisor, John Paul Mitchell, to move a large conference table down to the street level for removal from the building. They did so by using the top of the elevator cab. According to Mitchell, it had been the practice of the City Federal maintenance *545 crew to utilize the top of the elevator to transport large items several times each year.
The elevator had been manufactured by defendant which serviced the elevator pursuant to a continuing maintenance agreement. By the terms of this contract defendant made quarterly inspections of the elevator and responded to service requests when necessary. The service contract excludes repairs necessitated by negligence, accident or misuse of the equipment.
When large equipment or furniture was moved at the City Federal building a maintenance worker would get on top of the elevator where a control box regulating manual or automatic operation was located. The controls simply said "on" and "off", but did not specify which mode was being engaged. In addition, there was a box on a cord which controlled movement, and there was a light bulb on top of the elevator.
The workers would turn on the light and switch the controls to manual. This was designed to prevent movement of the elevator resulting from use of the automatic call buttons from any of the floors. After loading the equipment they would close the doors and one or more men would hold the item while another operated the controls. In the manual mode the elevator would move very slowly. When the elevator reached the desired floor (one floor below the floor on which the equipment was to be removed) they would push a lever to open the doors and unload the equipment. Mitchell testified that it was common practice to so utilize the elevator for moving large items. He stated that he had never seen any written instructions for using the top of the elevator, nor had he ever received written or verbal warnings from City Federal or defendant about the practice.
On December 28, 1978, defendant's employee Thomas Brennan made a service call to City Federal because the elevator was not operating. The invoice prepared by Brennan indicated that the shutdown was due to dust and dirt from the hanger *546 track and gibs which caused the door to come off the track. The problem resulted from hoisting building materials on top of the elevator. According to Brennan, he told Rivera that he shouldn't be using the elevator top to move material, that it was "dangerous" to do so, and that defendant would have to charge City Federal for the service call. Rivera signed the invoice.
Brennan claimed that he also spoke to Mitchell about the improper use of the elevator and told him that it was "dangerous" to use it as he did. According to Brennan, he had no other indication that the elevator was being used in such a fashion. There was no similar call after 1978.
Charles Grenauer, defendant's Sales Manager, stated that an invoice which indicated the cause of a problem, followed up by a conversation with the building superintendent, was considered sufficient warning by a mechanic to a customer, even though the invoice, as in this case, did not itself state that the use was dangerous, harmful, illegal or improper.
Silvio Bozzacco, plaintiff's expert elevator consultant, testified that after the 1978 breakdown, defendant should have more properly warned City Federal that the elevator should not be used in that manner. Further, he stated that had it been necessary to move large items on the top of the cab, defendant should have been called to supervise the move.
As noted, on January 19, 1981, Mitchell directed the four maintenance workers to move a conference table from the second floor to a location out of the building. After opening the door with the key, Rivera got on top with the controls. Two co-workers, Connelly and Pegan, loaded the table on top of the cab. Mitchell observed the activity. Connelly stayed on top holding the table in front of him. He could not see Rivera. It was dark when the doors shut, as the light bulb on top of the elevator was broken.
Instead of moving down slowly as expected, the elevator unexpectedly moved upward at normal speed and Rivera was *547 fatally injured when his head was crushed between an overhead beam and the elevator.
A review of the equipment on the day after the accident indicated that the controls were in proper working order. Further examination revealed that the elevator was in compliance with ANSI Code standards, the regulations governing the elevator industry.
Bozzacco concluded that the elevator was improperly maintained because (1) the control switch was confusing and only said "on" or "off" without indicating whether it was on automatic or manual mode; (2) there was no protective shield on the exposed incandescent light and (3) there was no warning sign on top of the elevator to indicate the dangers involved or to indicate that only authorized persons should utilize it.
However, according to defendant's expert, Henry Huntt, there is no requirement in the ANSI Code for a light on the elevator top, and therefore no requirement that a light be protected by a shield. Mr. Huntt testified that use of the key to gain access to the hoistway by persons other than trained maintenance mechanics or other than for emergency purposes is specifically prohibited by the code. Further, the code does not require any type of warning on top of the elevator. Huntt and Richard Otterbein, another expert presented by defendant, both testified that the control box indicating only "on" and "off" was not confusing to a person authorized to use it. The control was for inspection purposes and was to be utilized only by an authorized inspector. They suggested that the system was also not confusing to persons authorized to be on top of the cab for maintenance purposes.
The case was submitted to the jury on the issue of negligent failure to warn. Defendant interposed the defense of contributory negligence. The jury found defendant 100% negligent and awarded $150,000 in damages. Defendant's motion for new trial was subsequently denied.

*548 I
Defendant contends that the jury verdict imposing 100% liability on Westinghouse, based on the theory of negligence, is unsupported by the facts of the case.
Our role in reviewing a jury verdict is consonant with that of the trial judge when deciding the motion for new trial. R. 2:10-1. The verdict will be set aside only after giving due regard to the opportunity of the jury to pass upon the credibility of the witnesses and it clearly and convincingly appears there was error or mistake by the jury, or a miscarriage of justice. Dolson v. Anastasia, 55 N.J. 2, 6-8 (1969). R. 2:10-1; R. 4:49-1(a). In making our own determination as to whether or not there was a miscarriage of justice, we must defer to the trial judge with respect to those intangibles of the case not transmitted by the written record, such as witness credibility, demeanor and "feel of the case." Id. See also State v. Carter, 91 N.J. 86 (1982); Carrino v. Novotny, 78 N.J. 355, 360-361 (1979); Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 330 (1970).
Defendant claims that the verdict can only be the result of misunderstanding, bias or prejudice, Roman v. Mitchell, 82 N.J. 336, 347 (1980), and that therefore it is clearly wrong and a miscarriage of justice. Baxter v. Fairmont Food Co., 74 N.J. 588, 599 (1977); R. 4:49-1(a). We agree.
Rivera and his co-workers were not utilizing the elevator properly, even though he had used it similarly in the past, and there was at least some testimony from Brennan that decedent had been warned about such misuse. In addition, testimony was adduced that access to the elevator top was gained by use of the special key, located in the supervisor's office, and that Rivera had knowledge of the purpose of the control box, indicating an awareness of the dangers associated with use of the elevator cab top to move furniture.
Plaintiff correctly contends that several witnesses testified with respect to defendant's duty to warn. However, even *549 if defendant had a duty to warn about the dangers of utilizing the top of the elevator by non-service personnel, our careful review of the record leads us to conclude that the verdict is against the weight of the evidence and constituted a manifest injustice, at least insofar as the allocation of negligence and the attribution of 100% liability to defendant is concerned.[1] Accordingly, we find that the verdict constituted a miscarriage of justice warranting a new trial. See Dolson v. Anastasia, supra.

II
In light of the need for a retrial, we make a few additional comments.
Defendant claims that admission of Bozzacco's testimony was error because it went to the issue of design defect, and that those counts had been dismissed as time-barred prior to trial. While many of the evidentiary rulings challenged on this appeal did not constitute error or an abuse of discretion, we note that plaintiff's proffers at the retrial must relate to the alleged negligent failure to warn and not to design defect as counts three and five of the complaint had been dismissed before trial.
Finally, defendant claims that as neither plaintiff nor defendant had attempted to introduce negligence of City Federal into the case, the charge on concurrent negligence was "inappropriate and irrelevant and could only serve to mislead the jury," because the thrust of defendant's case was that decedent was responsible for his own actions.
*550 Plaintiff cites Post v. Manitowoc Eng. Corp., 88 N.J. Super. 199 (App.Div. 1965) in support of inclusion of concurrent negligence in the charge. In that case we held that plaintiff was entitled to the charge that she might recover if the accident was caused by the concurrent negligence of defendant and plaintiff's employer. We stated:
... If the proofs in the case present a situation where the jury could find that the plaintiffs' damage was caused not only by the defendant's negligence as charged, but also by the negligence of a third party, the principle of concurrent negligence is applicable as a part of proximate cause. [at 205]
In Post, the trial court's failure to charge concurrent negligence when requested by plaintiff was found to be error. The court stated:
... Failure to so charge materially prejudiced the plaintiffs' case since the jury was left to draw its own conclusions as to what the law was should it determine that both defendant and [the employer] were negligent. The general language of the charge dealing with negligence and proximate cause failed to instruct the jury how it should apply these principles to the facts as it found them. [at 207]
While we believe that the judge did not err in giving the charge under existing law, see also Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 246-247 (1981), we also believe that the ultimate decision with respect to a charge on concurrent negligence should abide the re-trial.[2] We have considered that the proofs may be substantially the same and that the jury will undoubtedly be asked again to allocate negligence between plaintiff and defendant. No issue is raised on this appeal concerning the propriety of proofs and lack of instructions directed to apportioning the negligence of City Federal and co-employees, with or without representation at the trial by the workers' compensation carrier.[3] Particularly in the absence of *551 an indemnification agreement, given the present state of the law, including the legislative immunity for employers, we have decided not to consider these issues sua sponte. At present the degree of negligence of the employer is irrelevant. See Ramos v. Browning Ferris Ind. of So. Jersey, Inc., 194 N.J. Super. 96 (App.Div. 1984), certif. granted 101 N.J. 211 (1985); Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 568-569, fn. 6 (1980); Arcell v. Ashland Chemical Co., Inc., 152 N.J. Super. 471 (Law Div. 1977); Ruvolo v. U.S. Steel Corp., 139 N.J. Super. 578 (Law Div. 1976). See also Kelly v. Carborundum, 307 Pa.Super. 361, 453 A.2d 624 (1982), aff'd 504 Pa. 238, 470 A.2d 969 (1984); Heckendorn v. Consolidated Rail Corp., 502 Pa. 101, 465 A.2d 609 (1983). See generally, Annot. "Modern Status of Effect of State Workmen's Compensation Act on Right of Third-Person Tortfeasor to Contribution or Indemnity From Employer of Injured or Killed Workman," 100 A.L.R.3d 350 (1980). However, we note that certification was granted in Ramos and that a decision is pending following argument in that case. The parties should, of course, consider the impact, if any, of Ramos, if decided prior to the retrial in this case, and may further develop the subject of instructions as to the employer's negligence as appropriate in the circumstances.[4]
The judgment under review is reversed, and the cause is remanded for retrial.
NOTES
[1] In Green v. Sterling Extruder Corp., 95 N.J. 263 (1984) the Supreme Court extended to an action in negligence the principle applicable to a claim in strict liability, that when a factory worker is injured while using an unsafe machine for its intended purpose, the manufacturer must be deprived of a contributory negligence defense. Id. at 271. See Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150 (1979); Cepeda v. Cumberland Eng'g Co., Inc., 76 N.J. 152 (1978). In this case, however, Rivera was not utilizing the equipment for its intended purpose and therefore the defense was proper.
[2] The fact that New Jersey is now a comparative negligence jurisdiction may not impact on this subject. Cf. e.g., Bofman v. Material Service Corp., 125 Ill. App.3d 1053, 81 Ill.Dec. 262, 466 N.E.2d 1064 (1984); Arcell v. Ashland Chemical Co., Inc., 152 N.J. Super. 471 (Law Div. 1977).
[3] Apportionment could affect the plaintiff's judgment and the rights of the employer and carrier against the civil defendant, see N.J.S.A. 34:15-40; Schweizer v. Elox Div. of Colt Industries, 70 N.J. 280 (1976).
[4] We do not address whether there should be bifurcation of liability and damages at the retrial, whether damages can be greater on the retrial or whether an "ultimate outcome" instruction should again be given, as suggested in Roman v. Mitchell, 82 N.J. 336 (1980).