**Re Neal Anthony CARTER, a minor by Gail P. CARTER and Craig A. Carter, his Natural Parents and Next Friends, and Gail P. Carter and Craig A. Carter, individually**

v.

**UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY—RUTGERS MEDICAL SCHOOL d/b/a Robert Wood Johnson Medical School, Lawrence T. Taft, M.D., John Doe, M.D., Victor Tuma, M.D., Eleftherios Halivopolous, M.D. and Metuchen Pediatric Associates, P.A.**

Civ. A. No. 91–3645 (NHP).

United States District Court,
D. New Jersey.

June 2, 1994.

---

W. David Allen and Marilyn A. Rigmaiden, Eaton, McClellan & Allen, Philadelphia, PA, for plaintiffs.

Cynthia A. Walters and Stewart M. Leviss, Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., Short Hills, NJ, for defendants Lawrence Taft, M.D. and University of Medicine and Dentistry of New Jersey.

Louis John Dughi, Jr., Dughi & Hewit, Cranford, NJ, for defendants Victor Tuma, M.D., Eleftherios Halivopolous, M.D., and Metuchen Pediatric Associates, P.A.

## AMENDED LETTER OPINION ORIGINAL ON FILE WITH CLERK OF THE COURT

POLITAN, District Judge:

This matter is presently before the Court on the motion *in limine* of defendants Lawrence Taft, M.D., and the University of Medicine and Dentistry of New Jersey ("UMDNJ") seeking a determination that the defendants in this action are entitled to have the jury determine and apportion the negligence of a settling physician, a Washington, D.C. pediatrician who is not a formal party to this proceeding.[1] The defendants further request a ruling that any verdict against them be molded as a matter of law to reflect a credit for any potential percentage of fault of the settling physician. Plaintiffs have submitted a cross-motion to preclude defendants from asserting at trial that the settling physician was negligent and/or that said negligence contributed to the infant plaintiff's injury. The motions are resolved pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated herein, defendants' motion is **GRANTED** and plaintiffs' motion is **DENIED.**

## I. STATEMENT OF FACTS

The facts giving rise to the underlying cause of action have been chronicled in a prior pronouncement of this Court and need not be restated. *See Carter v. University of Medicine and Dentistry of New Jersey,* 838 F.Supp. 957 (D.N.J.1993). For the purposes of this discourse it is sufficient to note that this negligence action and a separate but concurrent lawsuit in Washington, D.C. have been brought by Craig and Gail Carter on behalf of their son Neal Carter, now age ten. The claims in the action before me are directed against the two pediatricians, Dr. Victor Tuma and Dr. Eleftherios Halivopoulos of Metuchen Pediatric Associates, who treated

---

1. Defendants Victor Tuma, M.D., Eleftherios Halivopoulos, M.D., and Metuchen Pediatric Associates have joined in the instant motion.

infant Neal from his birth on December 15, 1983 to 6½ months of age. Plaintiffs. have also sued Dr. Lawrence Taft, a pediatric neurologist affiliated with UMDNJ, to whom the infant was referred for a neurological examination at age 3½ months.

After plaintiffs relocated to Washington, D.C., young Neal, then 7 months of age, came under the care of Dr. Clifford Booker and continued to receive treatment from Dr. Booker until age 18 months, at which time Neal's congenital brain condition, hydrocephalus, was diagnosed. Plaintiffs brought an action against Dr. Booker in the Superior Court of the District of Columbia. In August 1993, the parties in the D.C.. action reached a settlement and pursuant thereto executed a Release and Settlement Agreement. The Agreement contains, *inter alia,* a provision whereby plaintiffs agreed to indemnify Dr. Booker in any contribution claims arising as a result of the New Jersey action:

> The Plaintiffs … agree to indemnify and hold Defendant, Dr. Clifford Booker, harmless from and against any and all claims, demands, obligations, actions, causes of action, and damages, including, but not limited to any and all claims which may hereafter be made by any or all of the Defendants in the second lawsuit involving the Plaintiff's alleged injury filed in the United States District Court for the District of New Jersey in Civil Action No: 91–3645, individually and[/]or jointly, for contribution and/or indemnity, as to any and all sums which may be paid and/or adjudged against the Defendants in Civil Action No: 91–3645 either by way of judgment or settlement.

*See* Affidavit of Cynthia A. Walters, Esq., Ex. A at 3–4.

The settlement agreement further contains an indemnification provision in anticipation that Dr. Booker may be found to be a joint tortfeasor of the New Jersey defendants:

> [T]he parties hereto acknowledge that in the event any settlement or judgment is reached or entered in the New Jersey action, and any action against Dr. Booker

for contribution is brought by any or all of the settling Parties or Parties against whom any judgment is obtained by the Plaintiffs in the New Jersey suit, then any settlement or judgment against any or all of the Defendants in the New Jersey case shall be reduced (1) by the pro-rata share of Dr. Booker under the laws of contribution of the District of Columbia, in the event that he is found to be a joint tortfeasor in any suit of the New Jersey Defendants for contribution or (2) if the Court in any such suit for contribution applies the comparative negligence law of the State of New Jersey then Dr. Booker's share of responsibility, if he is adjudged a joint tort-feasor, shall be reduced by the percentage of liability he is found to share with all other persons, firms or corporations adjudged to be tortfeasor.

*See* Affidavit of Cynthia A. Walters, Esq., Ex. A at 2–3.

Defendants presently contend that the contractual obligations imposed by the settlement agreement, coupled with the virtual identity between the New Jersey and Washington lawsuits, warrant a determination by this Court that there must be an apportionment of causative fault between the settling and nonsettling defendants.

## II. DISCUSSION

█ A court's determination whether certain conduct is amenable to apportionment under the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15–5.1 *et seq.,* affects not only a plaintiff's potential recovery, but also the liability among joint tortfeasors. *Blazovic v. Andrich,* 124 N.J. 90, 103, 590 A.2d 222 (1991). Prior to the passage of the Comparative Negligence Act, the Joint Tortfeasors Contribution Law ("JTCL"), N.J.S.A. 2A:53A–1 *et seq.,* provided the means by which joint tortfeasors[2] could seek contribution from one another for any sums paid beyond their individual *pro rata* share of a judgment. *Blazovic,* 124 N.J. at 103, 590 A.2d 222; *see also* N.J.S.A. 2A:53A–3. The

---

2. The JTCL defines "joint tortfeasors" as:
   [T]wo or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.
   N.J.S.A. 2A:53A–1.

*pro rata* share was ascertained by simply dividing the total verdict by the number of available tortfeasors, *i.e.,* those tortfeasors who are solvent and not beyond the reach of process. *Judson v. Peoples Bank & Trust Co.,* 17 N.J. 67, 94, 110 A.2d 24 (1954), *aff'd on reconsideration,* 25 N.J. 17, 134 A.2d 761 (1957).

However, the subsequent enactment of the Comparative Negligence Act modified the JTCL's *pro rata* apportionment of liability among joint tortfeasors. An examination of the Comparative Negligence Act reveals that the JTCL's *pro rata* contribution scheme has been eclipsed by the percentage-liability formula, established by 2A:15–5.2 and 2A:15–5.3, which provides that liability will no longer be shared by joint tortfeasors on a *pro rata* basis. Instead, liability will be apportioned among joint tortfeasors on the basis of percentages of fault assigned to each by the trier of fact. *See Cartel Capital Corp. v. Fireco of N.J.,* 81 N.J. 548, 569, 410 A.2d 674 (1980); *Lee's Hawaiian Islanders, Inc. v. Safety First Prods.,* 195 N.J.Super. 493, 505, 480 A.2d 927 (App.Div.), *certif. denied,* 99 N.J. 205, 491 A.2d 703 (1984).

The New Jersey Supreme Court has described the resulting allocation of fault as follows:

> [T]he effect on the plaintiff of a joint tortfeasor's settlement will depend upon the percentage of fault found against him. When one defendant settles, the remaining co-defendant or co-defendants are chargeable with the total verdict less that attributable to the settling defendant's percentage share.

*Cartel Capital Corp.,* 81 N.J. at 569, 410 A.2d 674. In the event that plaintiff settles with a joint tortfeasor, the nonsettling tortfeasor is entitled to a credit representing the settling tortfeasor's share of the judgment. *Blazovic,* 124 N.J. at 106, 590 A.2d 222, *citing Theobald v. Angelos,* 44 N.J. 228, 241, 208 A.2d 129 (1965). As the New Jersey court

noted in *Young v. Latta,* 123 N.J. 584, 592, 589 A.2d 1020 (1991):

> Pursuant to the Comparative Negligence Act, the finder of fact must make an allocation of causative fault between settling and non-settling defendants so that the court can calculate the amount of the credit due the non-settler even though the non-settler cannot pursue a claim for contribution against the settler.

Of course, given the Comparative Negligence Act, the amount of the credit is based on the percentage of fault apportioned by the factfinder to the settling tortfeasor. *Young,* 123 N.J. at 592, 589 A.2d 1020; *see also Blazovic,* 124 N.J. at 106, 590 A.2d 222.

In *Young v. Latta,* the state supreme court addressed the applicability of the JTCL and the Comparative Negligence Act to a medical malpractice action that arose in 1983 (approximately the time that the present plaintiffs' claims arose). *Young* involved a plaintiff who alleged malpractice when two defendant physicians failed to diagnose an injury to his right optic nerve which ultimately resulted in blindness. On the eve of trial plaintiff reached a settlement with one defendant, leaving Dr. Latta as the sole nonsettling defendant. *Id.* at 587, 589 A.2d 1020.

Prior to trial, defendant Latta obtained a ruling that permitted the jury to determine whether the settling physician was in fact negligent, and, if so, to apportion the degrees of culpability between the two doctors. *Id.* The jury in fact determined that both defendants were at fault, with the settling physician responsible for 80% of the injury while the nonsettling doctor was saddled with the remaining 20% of fault. The trial court then molded the verdict to reflect a credit to the nonsettling defendant for the amount of the settler's negligence which in turn substantially reduced plaintiff's overall recovery. *Id.*[3]

The Supreme Court affirmed, holding that the factfinder must be entitled to make an allocation of causative fault between settling and nonsettling defendants so that in the

---

3. Plaintiff received $20,000 from the settling physician. After the trial the jury returned a verdict in plaintiff's favor for $150,000. Given the jury's apportionment of negligence, noted above, the court molded the verdict by entering judgment

against Dr. Latta in the amount of $30,000. Thus, despite proving damages of $150,000 *and* the causative negligence of both physicians, plaintiff emerged with a recovery of $50,000. *Id.*

event of a verdict adverse to the nonsettler the court can calculate the credit due him or her. *Young*, 123 N.J. at 592, 589 A.2d 1020. The Supreme Court explicitly stated that "a non-settling defendant may seek a credit in every case in which there are multiple defendants, whether or not a cross-claim for contribution has been filed." *Id.* at 596, 589 A.2d 1020. The court noted, however, that its decision did not give a nonsettling defendant free reign to assert the liability of a settling defendant without first providing the plaintiff with fair and timely notice. *Id.* at 597, 589 A.2d 1020. Rather, "a plaintiff should know as early in the case as possible whether a defendant will seek to prove the fault of a co-defendant." *Id.*

In opposition to defendants' motion, plaintiffs seek to distinguish *Young*'s allowance of apportionment of a settling defendants' negligence from the present situation by claiming that the settling defendant, Dr. Booker, unlike the settling physician in *Young*, is not technically a party to *this* lawsuit and hence cannot be a joint tortfeasor within the meaning of the relevant statutes. In essence, plaintiff reads *Young* as standing for the proposition that allocation of fault can occur only between persons who are parties to the lawsuit whose fault must be assessed for purposes of judgment. To buttress this assertion plaintiffs direct this Court's attention to N.J.S.A. 2A:15–5.2 of the Comparative Negligence Act, which states in pertinent part:

> In all negligence actions in which the question of liability is in dispute, the trier of fact shall make the following as findings of fact:
>
> \*        \*        \*        \*        \*        \*
>
> b.  The extent, in the form of a percentage, of each parties' negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of all the parties to the suit shall be 100%.

N.J.S.A. 2A:15–5.2. Plaintiffs contend that given the statute's explicit reference to "par-

ties," its apportionment provisions cannot apply to Dr. Booker, who is not and has never been a formal party to this New Jersey action.

In addition, plaintiffs cite a relatively recent Appellate Division decision, *Bencivenga v. J.J.A.M.M, Inc.*, 258 N.J.Super. 399, 609 A.2d 1299 (App.Div.), *certif. denied*, 130 N.J. 598, 617 A.2d 1220 (1992), for the proposition that a settler's negligence is not properly considered by the factfinder unless that settling tortfeasor is first joined as a party to the litigation in question. In *Bencivenga*, the court held that a fictitious defendant's conduct could not be considered when apportioning negligence among parties to the lawsuit. The court concluded that the "plain language of sections 5.1 and 5.2 make the negligence of the person or persons *against whom recovery is sought* and the negligence of each *party* or *parties to the suit* the prerequisites to apportioning fault." *Bencivenga*, 258 N.J.Super. at 406, 609 A.2d 1299. The court noted further that "[a] fictitious person is not someone against whom recovery can be sought because the fictitious person rule [N.J.Ct.R. 4:26–4] and due process prevent entry of judgment against a person designated by a fictitious name." *Id.* at 406–407, 617 A.2d 1220.

However, plaintiffs' reliance on *Bencivenga* is misplaced in the present context, as that case did not involve an apportionment of a settling tortfeasor's causative fault. Indeed, the *Bencivenga* court refused to allow apportionment, not of a settler's negligence, but rather, of an unknown and unidentified tortfeasor's negligence because that result could deprive the plaintiff of the opportunity to pursue collectible damages. *Bencivenga*, 258 N.J.Super. at 409–10, 609 A.2d 1299. Moreover, strong policy reasons militated against apportionment of the fictitious parties' fault in *Bencivenga*, since there the identity of the "fictitious" persons was singularly within the knowledge of defendant, who elected not to reveal those persons to plaintiff. *Id.* at 410, 617 A.2d 1220.[4]

---

4. In addition, in reaching its decision, the *Bencivenga* court placed great reliance on *Ramos v. Browning Ferris Ind. of So. Jersey, Inc.*, 194 N.J.Super. 96, 107, 476 A.2d 304 (App.Div.),

*rev'd*, 103 N.J. 177, 510 A.2d 1152 (1986). In *Ramos*, the Appellate Division noted that the New Jersey Legislature, via 2A:15–5.2, "expressed its intent to limit the task of the trier of

The instant case presents no such considerations. Here there are no fictitious or unknown entities against whom recovery is sought. Rather, there is currently a closed universe of six potential tortfeasors, five individuals or entities before me presently and one individual, Dr. Booker, with whom plaintiffs have previously settled. In addition, while in *Bencivenga* an apportionment of an unknown defendants' fault would have the effect of diminishing the judgment that plaintiff could collect given that individual's unidentified status, that concern is simply not implicated here, since the present allocation of Dr. Booker's fault (if any) would not leave plaintiffs with an uncollectible judgment against him given the fact that plaintiffs have settled already their disputes with Dr. Booker and have received a substantial sum from him.

While *Bencivenga* may not be dispositive of the instant apportionment issue, there is, however, little fundamental difference between the case at bar and the New Jersey Supreme Court's decision in *Young v. Latta,* noted above. In fact, a close examination reveals that both cases involve a physician who settled with the plaintiff(s) before a trial in which an allocation of that settling physician's negligence was/is sought. Although here Dr. Booker's settlement was prompted not by the filing of the instant action, as was the situation in *Young,* but by the initiation of suit in Washington, D.C., this splitting of the action for purely jurisdictional purposes does not vitiate Dr. Booker's status as a settling defendant insofar as this action is concerned.

Indeed, the present case is distinguishable from *Young* only in that plaintiffs' current litigation against the alleged tortfeasors has been divided between two jurisdictions. However, this is not a distinction that should prevent a jury from allocating the causative fault between the settler (Dr. Booker) and the nonsettling defendants. Although, as defendants note, the causative sequence of events relating to this case was split due to plaintiffs' relocation from New Jersey to Washington, D.C., this does not negate the fact that the claims against the defendants in both suits are identical and inextricably interwoven.[5] Indeed, distilled to its purest essence, the New Jersey action concerns the alleged misdiagnosis of the infant plaintiff's hydrocephalic condition from birth to 6½ months of age, while the Washington action was predicated on a simple extension of that purported misdiagnosis from seven to eighteen months. Thus, given the fact that the Washington, D.C. lawsuit is distinguishable from the present action only by jurisdictional happenstance, it logically (and equitably) follows that the jury in this case should be entitled to consider the relative fault of the settling Washington, D.C. physician.

Moreover, the settlement agreement executed by these very plaintiffs provides that any settlement and/or judgment against the defendants in the instant action will be reduced, *inter alia,* by the percentage of liability Dr. Booker is found to share with all other defendants adjudged to be tortfeasors. *See* Affidavit of Cynthia A. Walters, Esq., Ex. A at 2–3. Thus, for this reason, and for the reasons stated above, it is the conclusion of this Court that Dr. Booker should be treated as a settling defendant and that his level of

---

fact to determining the percentages of negligence of only those persons, necessarily parties, whose percentages must be known in order to mold the judgment." *See also Ramos v. Browning Ferris Ind.,* 103 N.J. 177, 193–94, 510 A.2d 1152 (1986) (noting in *dicta* that 2A:15–5.2 is restricted to parties to the action). The *Ramos* case did not address the issue of a settling tortfeasor, but rather involved a situation in which an employer's immunity precluded it from being a party to the negligence action. *Ramos,* 194 N.J.Super. at 107, 476 A.2d 304. However, the *Ramos* court also emphasized that while a "truer" verdict is more likely to be returned where the factfinder's attention is ultimately fixed on the conduct of the *parties,* a "necessary exception" to this rule exists

"where the judgment cannot be properly molded without assessing the percentage of negligence of a tortfeasor who settled." *Id.* at 106, 476 A.2d 304. In such cases "it is necessary for the fact finder to make such an assessment even though the settling tortfeasor will not be affected by the verdict." *Id.* (citations omitted).

**5.** For example, defendants note that (1) the proofs and issues on liability, proximate cause, and damages are identical; (2) plaintiffs' expert witnesses are identical with the same reports proffered in both cases; and (3) several defense experts are identical. Def.Br. at 10.

negligence (if any) may be ascertained and apportioned by the jury.

Plaintiffs further argue that, notwithstanding my determination that New Jersey law would permit the factfinder to consider the negligence of Dr. Booker, this Court should nonetheless not submit the issue of apportionment to the jury because defendants failed to give reasonable notice of their intention to prove the fault of the settling physician. This contention may be disposed of with little discussion.

"[T]he court should not permit the non-settler to wait until the last minute before alerting the court and the plaintiff's lawyer that the settler's conduct will be at issue." *Young*, 123 N.J. at 598, 589 A.2d 1020. In the instant case notice of the issue of defendants' use of Dr. Booker's purported negligence was set forth in defendants' Answers.[6] Moreover, the Final Pre–Trial Order, signed by all parties and filed on March 9, 1993 lists under Pending/Contemplated Motions:

> Plaintiffs contemplate filing a Motion in Limine to preclude the defendants from presenting any evidence or other information at trial concerning the plaintiffs' pending D.C. lawsuit filed against Clifford Booker, M.D.

From this brief excerpt it seems patent that plaintiffs not only were aware that Dr. Booker's conduct might become an issue in the New Jersey action, but were also planning a preemptive strike, in the form of a motion *in limine*, to prevent any reference to either the Washington lawsuit or the Washington physician's conduct. In addition, the Final Pre–Trial Order further reveals that both plaintiffs' and defendants' counsel listed the issue among the legal issues to be raised at trial:

> Preclusion of defense introduction of evidence at any stage of the trial, of the plaintiffs' current D.C. lawsuit brought by the plaintiffs' [*sic*] against Clifford Booker, M.D.

*See* Final Pre–Trial Order at 22. After review of the foregoing provisions, it is clear that plaintiffs have long been on notice and

have long been prepared to oppose any effort by defendants to raise the issue of the settling physician's negligence. Consequently, the contention that defendants' present motion is a furtive "last minute" effort to introduce the causative fault of the settler must be rejected.

### III. CONCLUSION

For the reasons expressed above, defendants' motion is **GRANTED**. As such, this Court will permit the jury in this case to determine and apportion the negligence of the settling physician, and, should the jury return a verdict adverse to defendants, this Court will mold that verdict to reflect a credit for the degree of fault that the jury allocated to the settling physician. Given this determination, it necessarily follows that plaintiffs' motion to preclude defendants from asserting at trial that the settling physician was negligent and/or that said negligence contributed to the infant plaintiff's injury must be **DENIED**.

---

6. *See, e.g.*, Third Separate Defense of defendants Taft and UMDNJ's Answer, filed October 16, 1991, which noted that, "[t]he damages sustained by the plaintiff, if any, were the result of the acts of third parties over whom the answering defendants had no control."