JOSEPH N. FARRELL AND EDITH FARRELL, PLAINTIFFS-
RESPONDENTS, v. VOTATOR DIVISION OF CHEME-
TRON CORPORATION, A CORPORATION WITH OFFICES
LOCATED IN LOUISVILLE, KENTUCKY, DEFENDANT-
APPELLANT.

Argued November 8, 1972—Decided January 22, 1973.

*Mr. Ernest F. Picknally* argued the cause for the appellant (*Messrs. Schuenemann & Picknally,* attorneys).

*Mr. Joseph I. McCullough, Jr.* argued the cause for the respondents.

The opinion of the Court was delivered by

JACOBS, J.  The Appellate Division reversed the Law Division's dismissal of the plaintiffs' complaint against the defendant Votator Division of Chemetron Corporation. We granted certification on Votator's application. 60 *N. J.* 465 (1972.)

In May 1967 the plaintiff Joseph Farrell was employed by Standard Brands, Inc. at its plant in Pennsauken. While cleaning a machine at the plant, his pant leg was caught on the exposed teeth of an axle-like shaft and he suffered consequential injuries. He duly received compensation benefits from his employer but not until April 1969 did he retain counsel. On April 18, 1969 his counsel filed a complaint against the defendant Reliance Electric & Engineering Company, along with the defendant Reeves Pulley Company, a division of Reliance, and against the defendant "John Doe and/or John Doe, Inc.," who was alleged to be the assembler, supplier or seller of the machine which caused the injuries. The John Doe appellation was stated to be fictitious, the real name being then unknown to the plaintiff. The complaint alleged that the machine was not equipped with a suitable guard (*Bexiga v. Havir Manufacturing Corp.,* 60 *N. J.* 402 (1972); *Finnegan v. Havir Manufacturing Corp.,* 60 *N. J.* 413 (1972)), that the injuries suffered by the plaintiff Joseph Farrell were the result of the negligence of the defendants, that the defendants were responsible not only because of their negligence but also under strict liability principles, and that Joseph, along with his wife Edith who sought damages for loss of consortium (*Ekalo v. Constructive Serv. Corp. of America,* 46 *N. J.* 82 (1965)), were entitled to compensatory damages from each of the defendants.

In the course of taking depositions, counsel for the plaintiffs learned for the first time on February 26, 1970 that the name of the defendant Chemetron Corporation appeared on the base of the machine which had caused the injuries; and there was testimony at that time that the name plate data on the base indicated that the machine had been built by

the Votator Division of Chemetron Corporation, Louisville, Kentucky. As soon as counsel learned of Chemetron's identity he applied to amend the complaint to change the name of "John Doe and/or John Doe, Inc." to Votator Division of Chemetron Corporation. On March 17, 1970 the Law Division entered an order for the amendment of the complaint .and thereafter the amended complaint was served on Votator. In due course the defendant Reliance moved for summary judgment and the motion was granted. This was affirmed by the Appellate Division in an unreported *per curiam,* and since the plaintiffs have not at any point or in any manner sought further review of this summary judgment we need not concern ourselves with the claim originally asserted by the plaintiffs against Reliance and its division Reeves.

Under date of June 19, 1970 Votator moved to set aside the order amending the complaint on the stated ground that it violated the statute of limitations. On October 19, 1970 the Law Division, being of the opinion that the plaintiffs' claim against Votator had been barred by limitations, dismissed it with prejudice. This was reversed in the Appellate Division's *per curiam* which pointed out that "the amendment to the complaint substituting Votator Division of Chemetron Corporation for John Doe related back to the original complaint which was filed before the expiration of the statute of limitations" (*R.* 4:9–3); accordingly, it remanded the matter to the Law Division for further proceedings in accordance with the Rules of Court. In its petition for certification Votator urged that the Appellate Division erred in its holding that the amendment related back to the date of the original complaint and it cited several New Jersey Supreme and Superior Court opinions, none of which, however, dealt with or bore upon the effectiveness of the filing of a John Doe complaint in tolling the statute of limitations. See Comment, "Unknown Parties: The John Doe Defendant," 1970 *Law and the Social Order* 256–68; Note, "Designation of Defendants by Fictitious Names—Use of John Doe Complaints," 46 *Iowa L. Rev.* 773–785 (1961); Com-

ment, "Suing Parties Defendant by Fictitious Names," 22 *Calif. L. Rev.* 685–695 (1934).

Statutes of limitations are designed to stimulate litigants to pursue their causes of action diligently and "to spare the courts from litigation of stale claims." *Chase Securities Corp. v. Donaldson,* 325 *U. S.* 304, 314, 65 S. Ct. 1137, 1142, 89 *L. Ed.* 1628, 1635 (1945). They penalize dilatoriness and serve as measures of repose. *Wood v. Carpenter,* 101 *U. S.* 135, 139, 25 *L. Ed.* 807, 808 (1879). When a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action. Where, however, the plaintiff does not know or have reason to know that he has a cause of action against an identifiable defendant until after the normal period of limitations has expired, the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play. See *Fernandi v. Strully,* 35 *N. J.* 434, 438 (1961); *cf. Rosenau v. City of New Brunswick and Gamon Meter Co.,* 51 *N. J.* 130, 139–140 (1968); *New Market Poultry Farms, Inc. v. Fellows, et al.,* 51 *N. J.* 419, 422–426 (1968); *Diamond v. New Jersey Bell Telephone Co., et al.,* 51 *N. J.* 594, 597 (1968); *Lawlor v. Cloverleaf Memorial Park, Inc.,* 56 *N. J.* 326, 339 (1970); *Rosenberg v. Town of North Bergen,* 61 *N. J.* 190, 195 (1972).

In *Strully* a foreign object was left in the patient's body during the course of an operation; the patient did not bring her action within the normal period of limitations but did bring it expeditiously after she first knew or had reason to know that she had cause for action. After reviewing all of the pertinent factors we determined that, on balance, the considerations of individual justice far outweighed the considerations of repose (35 *N. J.* at 449–451); accordingly, we held that she was not barred by limitations, applying the

so-called discovery principle" which has since been applied by us in varying situations (*New Market, supra,* 51 *N. J.* 419; *Diamond, supra,* 51 *N. J.* 594) and has been receiving ever increasing support elsewhere. See *Rosenau v. City of New Brunswick and Gamon Meter Co., supra,* 51 *N. J.* at 139. In the case at hand the plaintiffs knew they had cause for action against the manufacturer or assembler of the machine but did not know his true identity. They in good faith instituted their action against the manufacturer or assembler within the normal period of limitations, naming him under the fictitious name John Doe, describing him as best they then could, and later identifying him by an amendment to their complaint as soon as they, acting with reasonable diligence, ascertained his identity. Such John Doe practice has received approval in many states (46 *Iowa L. Rev.* 773); in some it has the explicit support of statute (46 *Iowa L. Rev. at* 776 *n.* 15); in others it has the support of settled practice without statute (46 *Iowa L. Rev.* at 776 n. 16); and in our own State there have been early statutes and recent Court Rules dealing specifically with the designation of defendants under "fictitious names." See *Harris, Pleading and Practice in New Jersey* § 59 (1939); *Bradner, New Jersey Practice* § 428 (1940); *Pressler, Current New Jersey Court Rules pp.* 538–39 (1972); *L.* 1891, *c.* 253, *pp.* 477–78; *L.* 1898, *c.* 228, *para.* 42, *p.* 566; *L.* 1903, *c.* 247, *para.* 43, *p.* 546; *R.S.* 2:27–42; *R.S.* 2:32–13; *R.R.* 7:4–5; *R.R.* 4:30–4(d); *R.* 4:26–4; *R.* 4:26–5(d).

In *Larson v. Barnett,* 101 *Cal. App. 2d* 282, 225 *P. 2d* 297 (1950), the plaintiff was injured by a car driven by Earl Barnett, Jr. The car had been sold on the very day of the accident and the plaintiff's attorney was uncertain as to the identity of the owner. Accordingly he named Earl Barnett, Jr., the driver, and John Doe, the owner, as defendants in a timely complaint, and when he ascertained who the true owner was he applied for and received permission to amend the complaint. By that time the normal statute of limitations had run but the court held that it was not a bar since

the amendment related back to the filing of the complaint. In his opinion, Justice Van Dyke quoted at length from *Irving v. Carpentier,* 70 *Cal.* 23, 11 *P.* 391 (1886), where the California Supreme Court had occasion to construe the provision in the California Code of Civil Procedure which directs that a plaintiff who is ignorant of the name of a defendant, shall state that fact, shall designate him by any name, and shall amend his pleading when he ascertains his true name. In *Irving* the court noted that the provision was primarily designed to protect a wronged plaintiff from the bar of limitations where he is unaware of the name of the wrongdoer; and it stressed, in general, the absence of prejudice to the wrongdoer and the justice of construing the provision liberally to achieve its remedial goals. 11 *P.* at 392.

In *Maddux v. Gardner,* 239 *Mo. App.* 289, 192 *S. W. 2d* 14 (1945), the plaintiff sued the Railroad Company along with John Doe and Richard Roe, the fictitiously-named engineer and fireman on the train which killed the plaintiff's decedent. The suit was started within the normal limitations period of 1 year but after the expiration of the year the plaintiff's petition was amended to substitute the name of B. A. Marble for John Doe the engineer. Though Missouri had no statute relating to John Doe practice, the court held that it was permissible practice and that the plaintiff's petition against Marble was not barred by limitations; in the course of its opinion it said:

> The petition discloses that it was the intention of plaintiff to sue the engineer of the train and, as there could have been no reason for her to have used the name "John Doe" to designate the engineer, if she knew who was the engineer, it will be inferred that plaintiff did not know his name at the time of the filing of the petition . . . The amending of the petition by inserting the name, Marble, was not the addition of another party to the cause of action but constituted a mere substitution of names. While no service of summons was had upon Marble, within the statutory time, or until after the expiration of one year from the date of the death of deceased, the service of summons did not constitute the commencement of the suit as against Marble. Suit was begun when the petition was filed against John Doe (McGrath v. St. Louis K. C. & C. R. Co., 128 Mo. 1, 30 S. W.

329; City of St. Louis v. Miller, 235 Mo. App. 987, 145 S. W. 2d 504; section 876. R. S. Mo. 1939. Mo. R. S. A.; see, also Green v. Supreme Lodge, etc., 79 Mo. App. 179), who was alleged to have been the engineer, and the amendment related back to the time of the filing of the petition. 192 *S. W. 2d* at 18.

*Cf. Wall Funeral Home, Inc. v. Stafford,* 3 *N. C. App.* 578, 165 *S. E.* 2d 532 (1969).

In *Wadsworth v. Boston Gas Company,* 352 *Mass.* 86, 223 *N. E.* 2d 807 (1967), the court went beyond the aforecited cases and further than anything called for in the matter at hand. Though Massachusetts has a statute which relates to fictitiously-named defendants (*Ann. Laws Mass.* c. 223, § 19 (1955)), the plaintiffs did not proceed under it. They had suffered injuries as a result of escaping gas in their apartment and instituted an action within the normal period of limitations, omitting, however, to name the Boston Gas Company as a defendant. After the normal period of limitations had run, they moved to amend their complaint by adding the Company and their motion was granted. In rejecting the Company's application for judgment in its favor grounded on limitations, the Supreme Judicial Court of Massachusetts pointed out that its views with respect to amendments were more liberal than elsewhere; under its broad views a plaintiff who seeks damages for injuries suffered by him may, at any time during the pendency of his complaint, be permitted by the trial judge to amend it by substituting or adding the party liable for his injuries; and since the amendment relates back to the date of the filing of the complaint the plaintiff is not barred by limitations so long as the original complaint was timely. See *McLaughlin v. West End St. Ry. Co.,* 186 *Mass.* 150, 71 *N. E.* 317 (1904); "Developments in the Law—Statutes of Limitations," 63 *Harv. L. Rev.* 1177, 1240 n. 524 (1950); *Annot.,* "Change in party after statute of limitations has run," 8 *A. L. R.* 2d 6, 152 (1949); *cf. Mears v. Economy Brake Service, Inc.,* 78 *N. J. Super.* 218 (App. Div.), *certif. denied,* 40 *N. J.* 216 (1963); *Bradley v. Powles,* 90 *N. J. Super.* 550 (*App. Div.*), *certif. denied* 47

*N. J.* 422 (1966); *Rooney v. Coraggio,* 95 *N. J. Super.* 112 (*App. Div.* 1967).

In our own State the pamphlet laws of 1891 (*L.* 1891, *c.* 253, *pp.* 477–78) contained an explicit provision which authorized a plaintiff to sue a defendant under a fictitious name and to amend by substituting the true name when it was ascertained (see also the Practice Act of 1903—*L.* 1903, *c.* 247, *para.* 43, *p.* 546); a similar provision was included in the 1898 Act concerning district courts. *L.* 1898, *c.* 228, *para.* 42, *p.* 566. These provisions were carried forth in title 2 of the revised statutes (*R. S.* 2:27–42; *R. S.* 2:32–13), but were not reenacted in the 1951 revision of title 2 (*N. J. S. A.* 2A:1–1 *et seq.*), evidently because in the interim the 1947 Constitution had taken effect and had broadly authorized the Supreme Court to make rules governing practice and procedure. The liberalizing rules which the Supreme Court adopted shortly thereafter contained nothing to suggest any purpose to narrow earlier practices with respect to fictitiously-named defendants. *Cf.* Rule 3:17–4 and the comment thereon in *Tentative Draft of the Rules Governing the Courts of New Jersey* 133–34 (1948).

Rule 7:4–5, originally adopted in 1948 with respect to civil practice in district and municipal courts, expressly provided that where the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, with appropiate amendment after his true name is ascertained. While no similarly worded rule was originally adopted with respect to the upper courts, the practice was undoubtedly known in those courts (*cf. R. R.* 4:30–4(d)) and the omission was presumably inadvertent; in any event, on February 25, 1969 a pertinent rule was promulgated, effective September 8, 1969 and applicable to civil practice in the superior, county and surrogate's courts. It specifically provided that if the defendant's true name is unknown to the plaintiff "process may issue against the defendant under a fictitious name" and directed that, prior to judgment, the plaintiff shall on motion "amend his complaint

to state defendant's true name." *R.* 4:26–4. The rule, being procedural, is in general to be deemed applicable to actions pending on its effective date as well as those instituted thereafter. See *Wildwood v. Neiman,* 44 *N. J. Super.* 209, 214 (*App. Div.* 1957); *Tsibikas v. Morrof,* 5 *N. J. Super.* 306, 309 (*App. Div.* 1949); *cf. Feuchtbaum v. Constantini,* 59 *N. J.* 167, 172 (1971); *Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* 14 *N. J.* 372, 381 (1954).

In the matter at hand the plaintiffs sufficiently met the stated requirements in the rule that the fictitious name be designated as such and that there be "an appropriate description sufficient to identify him." *R.* 4:26–4; *but cf. Karandontes v. Ferrell,* 7 *N. J. Misc.* 807 (*D. Ct.* 1929). The complaint set forth that John Doe was the assembler, supplier or seller of the machine which was located at Standard Brands' plant in Pennsauken and which caused his injuries, that the name John Doe was fictitious, and that the complaint would be amended as soon as the real name was ascertained. The normal period of limitations was about to run out and the plaintiffs' counsel, acting in good faith, set forth in the complaint all the information he was then able to obtain. Thereafter he proceeded with diligence towards ascertaining the true name, amending the complaint, and serving the defendant Votator. Under the circumstances it would disserve the rule's broad remedial purposes if it were construed to require more.

The plaintiffs' cause of action was not changed, nor was a new party added by the amendment identifying Votator as the true party referred to under the fictitious name John Doe in the original complaint. The amendment related back to commencement of the action (*R.* 4:9–3), and the date of the filing of the complaint (*R.* 4:2–2) rather than the date of service (*R.* 4:4–1) was the crucial time fixing such commencement. See *Pressler, supra,* at 465, 419, 424. Despite the foregoing, it is urged that since Votator's name did not appear as a party defendant in the plaintiffs' complaint within two years after the occurrence of the accident, Votator

obtained a vested defensive right under *N. J. S. A.* 2A :14–2 which may not be taken from it. In *Campbell v. Holt,* 115 *U. S.* 620, 6 *S. Ct.* 209, 29 *L. Ed.* 483 (1885), the United States Supreme Court held that a state may, without violating the federal constitution, withdraw the defense of limitations even after it has actually accrued, and in *Gallewski v. H. Hentz & Co.,* 301 *N. Y.* 164, 93 *N. E.* 2d 620 (1950), the New York Court of Appeals held that, at least in an exceptional situation, a barred cause of action may be revived without violating either federal or state constitutional restrictions.

While our courts have not subscribed to the breadth of the foregoing (*State v. Standard Oil Co.,* 5 *N. J.* 281, 293 (1950), *aff'd,* 341 *U. S.* 428, 71 S. Ct. 822, 95 *L. Ed.* 1078 (1951)), they have repeatedly recognized that a limitation statute such as *N. J. S. A.* 2A :14–2, which provides without further definition that the proceeding shall be commenced within 2 years after the cause of action "shall have accrued," is subject to later judicial interpretation and application even though the interpretation and application have the effect of lengthening the defendant's jeopardy. See *Fernandi v. Strully, supra,* 35 *N. J.* 434; *Rosenau v. City of New Brunswick and Gamon Meter Co., supra,* 51 *N. J.* 130; *New Market Poultry Farm, Inc. v. Fellows, et al., supra,* 51 *N. J.* 419; *Diamond v. New Jersey Bell Telephone Co., supra,* 51 *N. J.* 594; *cf. N. J. S. A.* 2A :14–1.1 where the Legislature fixed the period of limitations, not from accrual of the cause of action, but from a designated objective time such as the construction of a building. See *Rosenberg v. Town of North Bergen,* 61 *N. J.* 190 (1972).

In *Strully, supra,* 35 *N. J.* 434, more than 4 years from the date of the wrongful act had elapsed when the plaintiff instituted her action. The defense rested on the 2-year limitation in *N. J. S. A.* 2A :14–2 and the cases of *Weinstein v. Blanchard,* 109 *N. J. L.* 332 (*E. & A.* 1932) and *Tortorello v. Reinfeld,* 6 *N. J.* 58 (1950) which had given it rigid application. Adopting the discovery principle, · we

overruled the cited cases and held that the plaintiff was not barred by limitations; this holding necessarily denied any vested right in the defendant to assert or rely on a limitation bar inflexibly measured by the period of two years from the date of the accident or the wrongful act. Similarly in *New Market, supra,* 51 *N. J.* 419 and *Diamond, supra,* 51 *N. J.* 594, the discovery principle was applied to permit the prosecution of actions instituted 13 and 9 years, respectively, after the wrongful conduct; and in *Rosenau, supra,* 51 *N. J.* 130 it was held that *N. J. S. A.* 2A:14–2 did not bar an action instituted against a manufacturer as late as 22 years after it had sold and delivered a defective water meter, on a showing that the plaintiff's action was instituted expeditiously after he first suffered injuries caused by the meter.

The defendant Votator, by manufacturing the machine which the plaintiffs assert was distributed without being equipped with a suitable guard, admittedly placed itself in jeopardy of a subsequent cause of action. That action, though brought years later, may be held timely on a proper balance of considerations of individual justice and repose as in cases such as *Strully, supra,* 35 *N. J.* 434; and it may be held timely on a similar balance where, as here, the plaintiffs in good faith brought their action expeditiously against the manufacturer under a fictitious name, identified it by amendment as soon as they discovered its true name, and served the amended complaint diligently thereafter. The defendant Votator does not assert prejudice or reliance nor is it in any just position to do so; clearly it has no vested right in its own formulation of the 2-year limitation bar. See *Strully, supra,* 35 *N. J.* 434; *New Market, supra,* 51 *N. J.* 419; *Diamond, supra,* 51 *N. J.* 594; *Rosenau, supra,* 51 *N. J.* 130. There is no suggestion that the lapse of time has resulted in loss of evidence or impairment of ability to defend; nor is there any suggestion that the plaintiffs have been advantaged by it. Justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim; and the absence of prejudice, reliance or un-

justifiable delay, strengthens the conclusion that this may fairly be done in the matter at hand "without any undue impairment of the two-year limitation or the considerations of repose which underlie it." *Strully, supra,* 35 *N. J.* at 451. We are satisfied that the Appellate Division properly reversed the dismissal of the plaintiffs' complaint against the defendant Votator and its judgment is accordingly:

Affirmed.

*For affirmance*—Justices JACOBS, HALL and MOUNTAIN. and Judges CONFORD and SULLIVAN—5.

*For reversal*—None.