NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2539-14T3
                    A-2774-14T3


MARK R. KRZYKALSKI and MICHELE
KRZYKALSKI,

       Plaintiffs-Appellants,

   v.

DAVID T. TINDALL,

       Defendant-Respondent.

APPROVED FOR PUBLICATION

December 5, 2016

APPELLATE DIVISION

_____

Submitted September 13, 2016 — Decided  December 5, 2016

Before Judges Fisher, Leone  and  Vernoia
(Judge Leone concurring).

On appeal from the Superior Court of New
Jersey, Law Division, Burlington County,
Docket No. L-3048-11.

Law Offices of Robert F. Rupinski, attorneys
for appellant Michele Krzykalski (Robert F.
Rupinski, on the brief).

Andres & Berger, P.C., attorneys for
appellant Mark R. Krzykalski (Kenneth G.
Andres, Jr., of counsel; Abraham Tran, on
the brief).

Parker Young & Antinoff, attorneys for
respondent (Brad A. Parker, on the brief).

   The opinion of the court was delivered by

FISHER, P.J.A.D.

Plaintiff Mark R. Krzykalski commenced this action, alleging the negligence of both defendant David T. Tindall and a John Doe in the operation of their vehicles that caused an accident in which he was injured. In their separate appeals, which we consolidated, plaintiff and his ex-wife, Michele,[1] argue the jury's award of damages was against the weight of the evidence and constituted a miscarriage of justice; plaintiff also contends, among other things, that the judge erred in allowing the jury to apportion liability between defendant and the fictitiously-named John Doe. We find no merit in their arguments and affirm.

The auto accident in question occurred on October 24, 2009, at the intersection of Hornberger Avenue and Route 130 in Florence Township. Plaintiff's vehicle was in front of and in the same lane as Tindall's vehicle on northbound Route 130; both had slowed to allow an emergency vehicle enter onto Route 130 from Hornberger Avenue. Once their vehicles began to move forward, a vehicle driven by the fictitious John Doe passed them from the right lane of the northbound Route 130 lanes and crossed their lane to make a left turn onto Hornberger Avenue.

---

[1] Plaintiff Michele Krzykalski asserted a per quod claim for loss of consortium and services. The evidence revealed the marriage was troubled; they separated in June 2012 and later divorced.

Both plaintiff and Tindall braked as a result of Doe's actions. Plaintiff was able to stop without striking the vehicle in front of him; Tindall's vehicle struck the rear of plaintiff's vehicle.

By way of pre-verdict motions, the judge denied plaintiff a directed verdict on liability against Tindall and also rejected plaintiff's request that Doe's negligence, or the apportionment of liability between Tindall and Doe, be kept from the jury. The jury found both Tindall and Doe negligent, and found Tindall three percent and Doe ninety-seven percent responsible for plaintiff's injuries. Damages were awarded in plaintiff's favor in the amount of $107,890[2]; no damages were awarded to Michele. In molding the verdict, the judge entered judgment in favor of plaintiff and against Tindall in the amount of $3,236.70. Later motions for a new trial or additur were denied.

Both plaintiff and Michele appealed. Plaintiff argues:

> I. THE TRIAL COURT REVERSIBLY ERRED BY DENYING PLAINTIFF['S] MOTION FOR A DIRECTED VERDICT ON LIABILITY AS TO DEFENDANT TINDALL, AND THE LIABILITY VERDICT OF 97% AS TO THE PHANTOM JOHN DOE, AND 3% AS TO DEFENDANT TINDALL, WHO REAR-ENDED PLAINTIFF'S STOPPED VEHICLE, IS A MISCARRIAGE OF JUSTICE.

---

[2] $91,250 in pain and suffering, disability and impairment, loss of enjoyment of life, and other non-economic losses, and $16,640 in lost past wages.

3                                                          A-2539-14T3

II. THE TRIAL COURT REVERSIBLY ERRED IN PLACING THE PHANTOM "JOHN DOE" ON THE JURY VERDICT SHEET.

III. THE TRIAL COURT REVERSIBLY ERRED IN BARRING PLAINTIFF['S] THOMAS JEFFERSON UNIVERSITY HOSPITAL RECORDS FROM EVIDENCE.

IV. THE TRIAL COURT REVERSIBLY ERRED IN PERMITTING DEFENDANT TO PRESENT TESTIMONY AND ARGUE THAT PLAINTIFF['S] INJURIES WERE CAUSED BY HIS RIDING A ROLLER COASTER.

V. THE DAMAGE VERDICT AS TO PLAINTIFF . . . IN THE AMOUNT OF $91,250.00 FOR PAIN AND SUFFERING, DISABILITY AND IMPAIRMENT, AND LOSS OF ENJOYMENT OF LIFE, DESPITE THE FACT THAT EVERY DOCTOR TESTIFIED PLAINTIFF HAD PERMANENT RESIDUAL BRAIN DAMAGE AND PERMANENT PARTIAL VISION LOSS, AND DEFENDANT STIPULATED THAT PLAINTIFF HAD INJURIES WHICH PIERCED THE LIMITATION ON LAWSUIT THRESHOLD, IS A MISCARRIAGE OF JUSTICE.

    A. Plaintiff is Entitled to a New Trial, in Light of the Extent of Plaintiff['s] Injuries.

    B. The Damage Verdict as to Plaintiff . . . in the Amount of $91,250.00 was a Miscarriage of Justice and Shocking to the Conscience, and a New Trial Should be Granted Pursuant to He v. Miller.[3]

VI. THE DAMAGE VERDICT AS TO PLAINTIFF . . . IN THE AMOUNT OF $16,540.00 FOR PAST LOST WAGES AND $0 FOR FUTURE LOST WAGES, ALTHOUGH THE EVIDENCE DEMONSTRATED THAT [PLAINTIFF'S] PAST AND FUTURE LOST WAGES AMOUNTED TO

---

[3] During the pendency of this appeal, the Supreme Court rejected many aspects of its earlier holding in He v. Miller, 207 N.J. 230 (2011). See Cuevas v. Wentworth, 226 N.J. 480 (2016).

$350,000 AND $1,554,800.00, RESPECTIVELY, IS A MISCARRIAGE OF JUSTICE.

VII. THE DAMAGE VERDICT OF ZERO AS TO PLAINTIFF MICHELLE KRZYKALSKI FOR HER PER QUOD CLAIM, DESPITE THE EVIDENCE SHOWING THAT [PLAINTIFF'S] INJURIES DESTROYED THEIR FAMILY, IS A MISCARRIAGE OF JUSTICE AND REFLECTS THE TRAVESTY OF THE ENTIRE VERDICT.

Michele argues, in a single point, that the jury's decision to award her nothing was against the weight of the evidence and represented a miscarriage of justice.

We turn first to whether the trial judge properly permitted the jury's consideration and apportionment of John Doe's liability, as well as whether the jury's verdict that Tindall was only three percent responsible was against the weight of the evidence.[4] Thereafter, we briefly examine the arguments concerning the jury's award of damages.

I

In urging our reliance on statements in our case law that "a fictitious party is not a party to a suit," Bencivenga v. J.J.A.M.M., Inc., 258 N.J. Super. 399, 407 (App. Div.) (emphasis added), certif. denied, 130 N.J. 598 (1992), and the statutory

---

[4] We find insufficient merit in plaintiff's argument in his Point I that the judge erred in denying his motion for a directed verdict on Tindall's negligence to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), because the jury in fact found Tindall negligent.

direction that the trier of fact determine "[t]he extent, in the form of percentage, of each party's negligence," N.J.S.A. 2A:15-5.2(b) (emphasis added), plaintiff contends that the trial judge erred in directing the jury to determine whether John Doe was negligent and, if so, the percentage to which he was responsible. Although it gives the appearance of some syllogistic logic, we do not find this argument persuasive.

Consideration of an alleged tortfeasor's negligence and degree of responsibility is not governed by whether that tortfeasor may be said to be a "party" but turns on whether the other tortfeasor "will be affected by the verdict." See Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 194 N.J. Super. 96, 106 (App. Div. 1984), rev'd on other grounds, 103 N.J. 177 (1986). The law is best served, as the Court observed in Town of Kearny v. Brandt, 214 N.J. 76, 102 (2013), when the factfinder is allowed to evaluate the liability of all those potentially responsible. So, although, for example, an employer insulated by workers compensation laws will not have its responsibility apportioned, Ramos, supra, 103 N.J. at 184, other tortfeasors, such as those who have sought or obtained the protection of bankruptcy laws, and therefore are no longer answerable in damages, should nevertheless be considered, Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 115 (2004); see

also Town of Kearny, supra, 214 N.J. at 103 (providing other examples of tortfeasors whose liability was considered and apportioned despite plaintiff's inability to recover from them in whole or in part).

Because the Comparative Negligence Act would be disserved by exalting the "party" label in adjudicating responsibility for a plaintiff's claim, we have recognized that a non-settling defendant has a right to have a jury apportion the liability of a settling defendant once it has been proven at trial that the settling defendant was, in fact, negligent. See Green v. Gen. Motors Corp., 310 N.J. Super. 507, 545-46 (App. Div.), certif. denied, 156 N.J. 381 (1998); Mort v. Besser Co., 287 N.J. Super. 423, 431 (App. Div. 1996), certif. denied, 147 N.J. 577 (1997). Consequently, we have held that the comparative negligence of a phantom driver, such as John Doe here, should be considered by a jury in a trial brought by an injured party against another tortfeasor. See Cockerline v. Menendez, 411 N.J. Super. 596, 618-19 (App. Div.), certif. denied, 201 N.J. 499 (2010).

Plaintiff argues this case differs from Cockerline because in that case a uninsured motorist (UM) carrier standing in the shoes of the fictitious driver settled with plaintiff prior to trial and, here, the proceedings between plaintiff and his UM

insurer have yet to be resolved.[5] Despite that factual difference, however, there remains in both instances a need to apportion responsibility between the two tortfeasors. In short, if plaintiff and the UM insurer had settled prior to trial, apportionment would be required because Tindall, the remaining defendant, would be "chargeable with the total verdict less that attributable to the settling defendant's percentage share." Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 569 (1980). We see no distinction worthy of creating a different rule and drawing a different conclusion where the plaintiff and the UM insurer have not yet litigated their disputes. To allow plaintiff to obtain from Tindall the full amount of damages assessed by the jury and, later, seek recovery from the UM carrier, could result in a windfall, contrary to our prior holdings. As we said in Cockerline, "to preclude defendants from seeking an apportionment of liability against the phantom vehicles does not advance the purposes of the UM law and frustrates the purposes of the joint tortfeasor and comparative fault law." 411 N.J. Super. at 619. We, thus, reject plaintiff's contention that, because John Doe may not be labeled

---

[5] According to the parties' submissions, plaintiff previously refused his UM carrier's offer of the policy limits both before and during trial, leaving that matter to be determined upon an eventual demand for UM arbitration.

a "party," his negligence should not have been apportioned by the jury.[6]

We also reject plaintiff's argument that the jury's finding that John Doe was ninety-seven percent responsible and Tindall only three percent responsible was against the weight of the evidence. Plaintiff chiefly relies on <u>Dolson v. Anastasia</u>, 55 <u>N.J.</u> 2, 10-12 (1969), which held that a new trial was required when a jury failed to find defendant negligent when his vehicle struck plaintiff's vehicle from the rear. Contrary to what required a new trial in <u>Dolson</u>, the jury here found Tindall negligent and his negligence a proximate cause of plaintiff's injuries. The question posed here -- in the context of the trial judge's denial of a motion for a new trial on this point -

---

[6] It may, at first blush, appear that our holding today and, for that matter, our holding in <u>Cockerline</u>, are inconsistent with our earlier decision in <u>Bencivenga</u>, where we upheld a decision not to submit a fictitious defendant's liability to the factfinder for apportionment. Such an assumption would be mistaken. In deciding <u>Bencivenga</u>, we were persuaded that the defendant nightclub was in the best position to identify the fictitious defendant, who was one of its bouncers, and that it would have been inequitable to allow the nightclub to receive a potential benefit from its reticence. 258 <u>N.J. Super.</u> at 410. Similarly, our holdings here and in <u>Cockerline</u> also provide a more equitable result. <u>See also</u> <u>Kranz v. Schuss</u>, __ <u>N.J. Super.</u> __, __ (App. Div. 2016) (slip op. at 20) (holding that the only "equitable result" in this New Jersey suit — where an earlier New York suit against a New York defendant — was to have the New Jersey jury assign and allocate the fault of both the New Jersey defendant and the New York tortfeasor, even though the New York tortfeasor could never be a "party" to the New Jersey suit due to lack of personal jurisdiction).

A-2539-14T3

- simply concerns whether the jury's apportioning of responsibility between two tortfeasors was against the weight of the evidence.

A judge shall grant a motion for a new trial "if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a). In applying this standard, the judge must evaluate the evidence with an eye toward correcting "clear error or mistake by the jury." Dolson, supra, 55 N.J. at 6. The judge is to "take into account, not only tangible factors relative to the proofs as shown by the record, but also appropriate matters of credibility, generally peculiarly within the jury's domain, and the intangible 'feel of the case' which it has gained by presiding over the trial." Kita v. Borough of Lindenwold, 305 N.J. Super. 43, 49 (App. Div. 1997). Even then, we will not reverse the judge's ruling on the motion unless "it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1.

In ruling on the motion for a new trial, the judge correctly observed that the jury was faced with the consequence of two negligent acts committed by two separate individuals. Tindall failed to keep sufficient distance from plaintiff's

vehicle to avoid striking it from behind, and John Doe cut off plaintiff's vehicle, Tindall's vehicle, and others, by crossing the northbound lanes to make a left turn off the roadway. The degree of responsibility between these two tortfeasors presented a fact-sensitive question for the jury. In the jurors' eyes, John Doe was far more blameworthy than Tindall. And the trial judge observed the witnesses, and gained a feel of the case, found no miscarriage of justice in what the jury concluded. After close examination of the record in light of our standard of review, we cannot conclude that it "clearly appears" the verdict was "a miscarriage of justice." R. 2:10-1.

## II

We find insufficient merit in plaintiff's contention that the jury's award of damages, either separately or collectively examined, constituted a miscarriage of justice to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We come to the same conclusion with regard to Michelle's contention that the jury's verdict on her claim for damages also constituted a miscarriage of justice. We add only the following few brief comments.

In his third point, plaintiff argues the trial judge erred in barring admission of plaintiff's Thomas Jefferson University Hospital records. In his brief, plaintiff did not refer us to

where in the record this ruling was made and he did not identify the particular records in question. Based on our own review of the record, we assume plaintiff refers in this point to hospital records he offered into evidence for the first time shortly before summations. The record suggests that although medical experts may have either alluded to or based their opinions on their review of some hospital records, Tindall objected because there were things mentioned in the records in question that had not been addressed by any witness. The judge sustained that objection.

We find no abuse of discretion in the judge's ruling. To the extent the records contained information not previously mentioned by a witness, the judge correctly excluded them. And to the extent they were offered to corroborate an expert's testimony, their exclusion was harmless.

Lastly, we reject the arguments of both plaintiff and his ex-wife that the verdict on damages was against the weight of the evidence and represented a miscarriage of justice. To be sure, plaintiff has advocated his injuries were extensive and that the jury was mistaken in rendering an award far short of what he believes is fair and just. The fact of the matter is, however, that the extent and significance of plaintiff's injuries was much in dispute, and the jury was entitled to

exercise its judgment in crediting or rejecting plaintiff's claims. By the same token, the jury's decision to award nothing to Michele likely was based in part on its view that plaintiff was not injured as severely as he claimed. Also, Michele took on no additional responsibilities due to the accident and, with the deterioration of their marriage that started prior to the accident, she incurred no loss as a result of the accident. We have been presented with no principled reason for second-guessing the jury's determinations on damages.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

**LEONE, J.A.D., concurring.**

I concur in the result reached by my colleagues but write separately to explain why, in my view, that result hews to the statute and the governing precedent of our Supreme Court because a fictitious party is a "party" under the Comparative Negligence Act ("Act").  N.J.S.A. 2A:15-5.1 to -5.8.

The Act provides that the trier of fact shall determine "[t]he extent, in the form of a percentage, of each party's negligence or fault.  The percentage of negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all the parties to a suit shall be 100%."  N.J.S.A. 2A:15-5.2(a)(2) (emphasis added).

Our Supreme Court has held that the Act "restricts the assessment of negligence to 'the parties to [the] suit.'"  Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 193 (1986) [Ramos II] (quoting N.J.S.A. 2A:15-5.2(b) (1973)).  In Ramos II, the Court found that once an employer, immune under the Workers' Compensation Act, "obtain[ed] its summary judgment of dismissal, [it] was no longer a party to the suit, and the trial court correctly decided not to submit [its] negligence to the jury." Ibid.

Subsequent to Ramos II, the Court allowed the assessment of the negligence of parties who could not be held liable for

reasons other than immunity. Town of Kearny v. Brandt, 214 N.J. 76, 83 (2013) (holding that "when the claims against a defendant are dismissed on statute of repose grounds, fault may be apportioned to the dismissed defendant under the Comparative Negligence Act"); Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 116 (2004) (holding that fault may be apportioned to "a joint tortfeasor whose case is dismissed before trial because of a bankruptcy discharge"); Young v. Latta, 123 N.J. 584, 596-97 (1991) (holding that a non-settling defendant may obtain an allocation of fault to a settling defendant).

In those cases, the Court distinguished Ramos II because "no cause of action in tort against the employer ever arose" as the employer was completely immune and thus "not a 'party' within the meaning of N.J.S.A. 2A:15-5.2." Brandt, supra, 214 N.J. at 99, 103; see Brodsky, supra, 181 N.J. at 115 ("an employer cannot be a party to a negligence action"). The Court reaffirmed that allocation of negligence was only available against a "party" within the meaning of the Act. See Brandt, supra, 214 N.J. at 98 ("the terms 'each party' and 'all the parties to a suit,' as used in the Comparative Negligence Act, encompass defendants who have been granted dismissals pursuant to the statute of repose" (citation omitted)); Brodsky, supra, 181 N.J. at 110 ("a defendant who has been dismissed from a case

as a result of a bankruptcy discharge is still a 'party' to whom a percentage of fault may be allocated"); see also Brandt, supra, 214 N.J. at 100 ("[Young] implicitly recognized 'that a defendant who settles and is dismissed from the action remains a "party" to the case for the purpose of determining the non-settling defendant's percentage of fault'" (quoting Brodsky, supra, 181 N.J. at 113)).

Thus, the issue before us is whether an unidentified person named as a fictitious party is a "party" within the meaning of the Act. In Bencivenga v. J.J.A.M.M., Inc., 258 N.J. Super. 399 (App. Div.), certif. denied, 130 N.J. 598 (1992), we correctly recognized that the Act addresses "apportioning negligence among parties to the lawsuit." Id. at 411; see Steele v. Kerrigan, 148 N.J. 1, 33 (1997) (noting "with approval the holding in Bencivenga, supra, that the obligation to apportion fault applies only to tortfeasors that are defendants in the litigation"). However, Bencivenga, supra, then ruled that "the plain and ordinary meaning of the statutory language precludes inclusion of a fictitiously named tortfeasor from the Act's commands for apportioning fault." 258 N.J. Super. at 406. The rationales for that ruling are flawed and out of step with subsequent Supreme Court cases.

First, Bencivenqa cited the language in N.J.S.A. 2A:15-5.1 providing that contributory negligence does not bar recovery if it "was not greater than the combined negligence of the persons against whom recovery is sought." Bencivenqa, supra, 258 N.J. Super. at 406. We then reasoned that "[a] fictitious person is not someone against whom recovery can be sought because the fictitious person rule, R. 4:26-4, and due process prevent entry of judgment against a person designated by a fictitious name." Id. at 406-07. However, a fictitious defendant literally is a person against whom recovery is sought. It is true that recovery cannot be obtained until the fictitious party is identified and served. However, subsequent to Bencivenqa, our Supreme Court in Brodsky and Brandt permitted allocation of the negligence of parties against whom recovery could not be obtained. In any event, N.J.S.A. 2A:15-5.1 addresses contributory negligence, not comparative negligence.

Second, Bencivenqa, supra, reasoned that "a fictitious person is not a party to a suit. The person plaintiff identifies as a fictitious defendant only becomes a party to the suit when the defendant's true name is substituted in an amended complaint and service is effected." 258 N.J. Super. at 407. However, a fictitious defendant is listed as a party in the complaint, and "process may issue against the defendant under a

fictitious name."  R. 4:26-4.  Bencivenga cited Farrell v. Votator Division of Chemetron Corp., 62 N.J. 111, 120 (1973), but Farrell ruled that substituting a fictitious defendant's true name was not the addition of "a new party" but the renaming of the existing fictitious party.  Ibid.; see Stegmeier v. St. Elizabeth Hosp., 239 N.J. Super. 475, 484 (App. Div. 1990).

Third, Bencivenga stated its "result is supported by our holding in Ramos v. Browning Ferris Ind. of So. Jersey, Inc., 194 N.J. Super. 96 (App. Div. 1984) [Ramos I], rev'd on other grounds, 103 N.J. 177 (1986) [Ramos II]."  Bencivenga, supra, 258 N.J. Super. at 407.  Bencivenga quoted Ramos I's reasoning that "[a] truer verdict is more likely to be returned where the fact finder's attention is ultimately fixed on the conduct of the parties who will be affected by the verdict."  Ibid. (quoting Ramos I, supra, 194 N.J. Super. at 106).

> [T]here is no more reason to have a fact finder assign a percentage of negligence to someone who is not affected by the verdict than to assign a percentage of negligence to acts of God (such as the snow in this case) or a myriad of other causative factors that may have contributed to the happening of an accident.
>
> [Ibid. (emphasis added) (quoting Ramos I, supra, 194 N.J. Super. at 106).]

However, our "affected by the verdict" test in Ramos I was not adopted by our Supreme Court in Ramos II.[1] Moreover, subsequent to Bencivenga, the Court in Brodsky and Brandt permitted allocation of the negligence of parties who would not be affected by the verdict, such as defendants protected by bankruptcy or the statute of repose.

Thus, it appears Bencivenga is no longer good law on whether apportionment of negligence is possible from a party from whom recovery is not currently possible. While Brandt mentioned Bencivenga in describing how "[t]he Appellate Division has also considered the issue of apportionment in several settings," Brandt did not involve fictitious defendants. Brandt, supra, 214 N.J. at 101-02, 103. Thus, we do not read Brandt as adopting the holding in Bencivenga barring the assessment of negligence of fictitious parties. Indeed, the Court in Brandt announced four "guiding principles" for the assessment of negligence, which support assessing the negligence of a fictitious party. Id. at 102—03.

---

[1] Ramos II, supra, did agree that "other causes, such as the snow that fell on the ground, might have contributed to the happening of the accident, yet the degree of fault to be attributed to those additional causes was not submitted to the jury." 103 N.J. at 193 (citing Ramos I, supra, 194 N.J. Super. at 106). Unlike snow and other acts of God, however, a fictitious driver can be sued, may be liable, and should be considered in assessing the comparative negligence of the persons who contributed to causing an accident.

"First, the Comparative Negligence Act and the Joint Tortfeasors Contribution Law promote 'the distribution of loss "in proportion to the respective faults of the parties causing that loss."'" Id. at 102 (quoting Brodsky, supra, 181 N.J. at 114). "Given the impact of a defendant's percentage of fault on the scope of its liability, the statutes' objectives are best served when the factfinder evaluates the fault of all potentially responsible parties." Ibid. That principle plainly supports assessing the negligence of a fictitious party who helped cause the loss and is potentially responsible. Absent allocation of negligence of the fictitious party, "a defendant who is found to be one percent negligent would be held responsible for ninety-nine percent of the negligence caused by a joint tortfeasor." See Brodsky, supra, 181 N.J. at 116. The Court "decline[d] to follow th[at] approach," and we should likewise decline to impose 100% liability on defendant though the jury found him only 3% liable and the fictitious driver 97% liable. See ibid.

"Second, our courts have barred apportionment where, as a matter of law, defendant could not under any circumstances be a joint tortfeasor under N.J.S.A. 2A:53A-2." Brandt, supra, 214 N.J. at 102. Unlike the employer "immunized from any action in tort" in Ramos II, a fictitious party could be a joint

tortfeasor under N.J.S.A. 2A:53A-2 if identified and served. See ibid.[2]

"Third, apportionment of fault under the Comparative Negligence Act and the Joint Tortfeasors Contribution Law does not turn on whether the plaintiff is in a position to recover damages from the defendant at issue." Id. at 103. Thus, the apportionment of negligence of a fictitious party is not precluded because the plaintiff will not be in a position to recover damages until it identifies and serves that party.

"Fourth, a claimant's failure to conform to a statutory requirement for asserting claims against a given defendant does not necessarily bar apportionment of that defendant's fault at trial." Ibid. There is no statutory bar against asserting a claim against a fictitious defendant; indeed, it is permitted by Rule 4:26-4.

Thus, assessing the negligence of a fictitious party is consistent with all four guiding principles articulated by our Supreme Court in Brandt. "Applied here, these principles require that we affirm the [Law] Division's decision on the

---

[2]  For purposes of N.J.S.A. 2A:53A-2, "the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1.

issue of apportionment." See Brandt, supra, 21 N.J. at 103. "The goals of our comparative fault statutory scheme are advanced if the jury assesses the [fictitious] defendant['s] potential fault in this case" because such assessment "promotes fair allocation of responsibility and avoids creating an incentive for a plaintiff to strategically target only one of a range of culpable defendants." See id. at 104.

Indeed, as the majority opinion points out, plaintiffs have the ability to indirectly obtain a measure of compensation based on the negligence of the fictitious driver through uninsured motorist (UM) insurance, but chose not to complete that process before going to trial against defendant. Cf. Cockerline v. Menendez, 411 N.J. Super. 596, 617-19 (App. Div. 2010) (approving apportionment of negligence of a fictitious driver after the plaintiff recovered for his negligence under UM insurance). Assessing the negligence of the fictitious driver prevents plaintiffs from strategically waiting to proceed against UM insurance, allocates fault based on actual negligence of the various drivers, and avoids double recovery by plaintiffs.

For these reasons, the trial court's apportionment of negligence was proper and should be affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION