**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4333-18T3

SHIRLEY MALDONADO,

    Plaintiff-Appellant,

v.

DRAYTON CORPORATION,
CHESTER ASSOCIATES, a
New Jersey Partnership, GRAND
CHESTER ASSOCIATION, INC.,
OTHER SIDE LANDSCAPING, LLC
and ACTIVE FOOT AND ANKLE,
LLC, WHO OWNED, OPERATED,
MAINTAINED AND MANAGED
THE PARKING LOT AT 140 GRAND
AVENUE, ENGLEWOOD, NJ WHEN
PLAINTIFF WAS CAUSED TO SLIP
AND FALL,

    Defendants-Respondents.

_____

Submitted April 22, 2020 — Decided May 11, 2020

Before Judges Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3021-17.

Franzblau Dratch, PC, attorneys for appellant (Brian Michael Dratch, of counsel and on the briefs).

Zimmerer, Murray, Conyngham & Kunzier, attorneys for respondent Other Side Landscaping (Frank J. Kunzier, of counsel and on the brief; Sidney E. Goldstein, on the brief).

Law Offices of Nancy L. Callegher, attorneys for respondents Drayton Corporation and Active Foot and Ankle, LLC (Joseph M. DiCicco, on the brief).

Law Offices of Terkowitz & Hermesmann, attorneys for respondents Grand Chester Associates and Grand Chester Association, Inc. (Jonathan S. Robinson, on the brief).

PER CURIAM

Plaintiff Shirley Maldonado appeals from a January 25, 2019 order granting summary judgment in favor of defendants Drayton Corporation and Active Foot and Ankle, LLC. She also challenges an April 26, 2019 order granting defendants Grand Chester Associates and Grand Chester Association, Inc., (collectively Grand Chester), and Other Side Landscaping, LLC's motions to dismiss her complaint. We affirm.

Plaintiff was a tenant in a building Grand Chester managed in Englewood. On February 5, 2016, she parked and exited her car from her assigned space, fell on ice and snow around her vehicle, and injured her left wrist. Active leases its medical office space from Drayton in a building adjoining the lot where plaintiff

2

A-4333-18T3

fell. On February 25, 2016, plaintiff's former counsel sent a letter to Grand Chester, informing it of the incident, seeking information regarding its insurance carrier, and requesting video surveillance of the lot.

On May 1, 2017, plaintiff filed a complaint against Drayton and fictitious corporate entities who owned, operated, maintained, and managed the parking lot. Plaintiff named Drayton as a defendant based on the tax assessor records, which listed Drayton as the owner of the lot.

In addition to deposing its principal and sole shareholder, Drayton's answers to written discovery asserted plaintiff was injured on property Grand Chester "owned and/or maintained." As a result, plaintiff amended her complaint to name Grand Chester and Active on June 27, 2018. Grand Chester moved to dismiss the amended complaint on grounds it exceeded the statute of limitations. Grand Chester's motion averred it controlled the portion of the lot where plaintiff was injured, pursuant to an easement, and contracted with Other Side for snow and ice removal on the date of plaintiff's accident.

Drayton and Active moved for summary judgment, arguing they were not responsible for, or in control of, the area where plaintiff sustained her injury. The motion judge granted the motion, noting:

> The entity giving the easement is not [Drayton] and it's not [Active]. The easement is dated April 23, 1982. So

that is . . . a parking easement for the alleged unit owners' parking spaces . . . given to the condo unit association [thirty-six] years ago.

Now if in fact Drayton were the owner of . . . those particular parking spots then the easement would have been given by Drayton to the entity who received the easement, which is Grand Chester Association, which is the same name which appears on the sign outside of where the lead-up, or the entrance, or the egress/ingress driveway to that lot on the pictures that counsel were kind enough to show me this morning.

. . . Drayton is not the owner of the unit parking spots which were given by easement to the association. . . . [T]hose units were owned by Grand Chester Associates before the easement was given in 1982 to Grand Chester Association. . . .

So the opposition to this motion is that the tax assessor's office says Drayton owns this property. Now . . . I don't know what the property is. I have no actual survey in front of me showing a border to the property that Drayton arguably owns. I think it's pretty clear . . . Drayton owns the building. What part of the parking lot if any Drayton owns I simply don't know. And also logically it would seem that for Grand—if in fact Drayton owns part of the parking lot then there should be something on file somewhere by which Drayton deeded or gave an easement to Grand Chester Associates sometime in 1982 or earlier such that Grand Chester Associates could then give another easement to the Grand Chester Association in 1982.

All of this means . . . Drayton has had nothing to do with what the easement gave to the association. And it wasn't even Drayton who gave it to the association. It was Grand Chester Associates.

A-4333-18T3

. . . .

But no one is telling me anything other than [Drayton and Active] saying I have nothing . . . to do with those particular spots, inclusive of the area where the plaintiff fell. And the only thing that I have to deal with on my spots, I have my own private snow company taking care of snow removal from that area and somebody else takes care of the rest of the lot . . . whereby an entity known as [Other Side] has a contract not with Drayton, but with Grand Chester Condo Association for the winter season of 2015 and 2016, which I believe is inclusive of the date of plaintiff's accident.

. . . .

. . . I don't think [Drayton's ownership] has been established notwithstanding the tax assessor's comments because I don't know physically what that lot and block number includes and whether it includes the exact area where the plaintiff fell, or if it includes the parking lot entirely, or part of it, or something else. . . .

So . . . control is the key. . . . Drayton or [Active] . . . has nothing to do with that property where plaintiff fell, didn't sign any contract for snow removal, had literally no control or contact with that property at all. And it is clear that [they] didn't sign the snow removal contract which was in effect for the area where plaintiff fell.

After the judge granted Drayton and Active summary judgment, plaintiff amended her complaint to name Other Side. Other Side moved to dismiss the

5

complaint as beyond the statute of limitations. The motion judge made the following findings:

> At the plaintiff's deposition, there was an indication that it looked like the area had been plowed already . . . .
>
> . . . .
>
> So the fact that there was arguably plowing done where the plaintiff knew she was parking at the time that she fell does not indicate to me that this is somehow new knowledge that there was somebody plowing the area. This knowledge dates way back to when the complaint was originally filed.
>
> . . . There may have been some confusion with respect to who the tax assessor's office reflected as the owner of the property. But at the same time, everybody knew that where the plaintiff was parking was assigned to her or assigned to who she leased the apartment from by the entity Grand Chester . . . . So we certainly knew Grand Chester was involved in some way because they assigned that particular spot. We knew plowing had occurred. We knew what the tax assessor's office [stated]. So I'm looking at this, and then [nine] months go by and the statute of limitation runs.
>
> Respectfully . . . discovery could have been pushed forward at a quicker rate at the time the complaint was originally filed. There could have been [depositions] taken earlier. . . .
>
> . . . [F]rom a timeline perspective, the plaintiff had [nine] months to find out who was involved in this case. And from a due diligence perspective under the

[Matynska][1] case, under the Mears[2] case, and may have been the Viviano[3] case, the due diligence is not just before the statute runs [nine] months after the complaint was filed, but also after the statute runs.  I just feel this could have been done on a quicker basis.

And if I understand what [plaintiff's counsel] is saying, he first learned about it when he was told by other parties . . . maybe it was more than a year after he filed the complaint.  The reality is this information was not hidden from anybody.  It was delayed.  Arguably plaintiff could have moved to get the information quicker [but] [d]id not do so.  Nobody misled anybody . . . no part of this case at any point misled anyone with false information about who was involved and who was not involved.

. . . [A]t the time that I granted the . . . motion to amend the complaint to bring in [Other Side] . . . I didn't consider the merits of the case . . . [and n]ow I am . . . . The position [Other Side] is in is no different . . . than the position Grand Chester was in because that is who hired [Other Side] to do the plowing.

And so having granted Grand Chester's motion on the same fictitious designation issues this moving party raises before me at this time, I'm hard-pressed not to grant it for the same reasons.

I would also note one or two other factors. . . . [Mears] imposes a due diligence obligation before and

---

1  Matynska v. Fried, 175 N.J. 51 (2002).

2  Mears v. Sandoz Pharm., Inc., 300 N.J. Super. 622 (App. Div. 1997).

3  Viviano v. CBS, Inc., 101 N.J. 538 (1986).

after the statute runs. With respect to the invoice, there is a specific notation that some form of . . . ice remedy was salted or sanded . . . on the invoice . . . of [Other Side]. There is no indication in that invoice that they knew about this particular accident.

And even if they did somehow know . . . there was no indication that they knew they were being sued. People fall all the time and don't necessarily file a lawsuit. . . .

I don't feel that there was due diligence either before or after the statute of limitations. And under the [Mears] case, under the [Matynska] case, this is not information that could not have been known. The plaintiff could have asked Grand Chester who did the snow plowing or what their connection was to the place where Other Side . . . was in fact plowing . . . who was involved in that area. And that would have generated identities at a much earlier time.

## I.

We review de novo a trial court's decision to grant or deny a motion to dismiss pursuant to Rule 4:6–2(e). Rezem Family Assoc., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011). A de novo standard also applies "[w]hen the legal conclusions of a trial court on a Rule 4:46 summary judgment decision are reviewed on appeal." McDade v. Siazon, 208 N.J. 463, 473 (2011).

Plaintiff raises the following arguments on appeal: 1) Drayton's delay in providing interrogatory responses prevented her from learning Other Side's

identity before the statute of limitations expired; 2) she acted with diligence in ascertaining Grand Chester and Other Side's identity because she relied on the tax assessor information, lacked other information indicating Grand Chester's involvement, and was not required to perform a title search to ascertain the owner of the lot; 3) Drayton's intentional delay in responding to interrogatories prevented her from discovering Grand Chester's involvement; 4) Other Side and Grand Chester did not demonstrate how the delay in naming them was prejudicial on the motion to dismiss; and 5) summary judgment was inappropriate where Drayton and Active never refuted the tax assessor's records, which established ownership of the lot.

Pursuant to N.J.S.A. 2A:14-2, plaintiff had two years to commence her personal injury suit. However, "determination of the accrual of a cause of action is an issue for the court." Baird v. Am. Med. Optics, 155 N.J. 54, 65 (1998). An "injured party's awareness of the injury and the fault of another" is critical to determining the accrual date. Id. at 66.

Rule 4:26-4 "suspends the running of the [s]tatute of [l]imitations when a plaintiff does not know the true identity of a defendant." Mears, 300 N.J. Super. at 628. Pursuant to the rule

> [t]he identification of a defendant by a fictitious name
> . . . may be used only if a defendant's true name cannot

be ascertained by the exercise of due diligence prior to filing the complaint. Mears, 300 N.J. Super. at 631-33; Cardona v. Data Sys. Computer Ctr., 261 N.J. Super. 232, 235 (App. Div. 1992). If a defendant is properly identified by a fictitious name before expiration of the applicable limitations period, an amended complaint substituting a fictitiously named defendant's true name will relate back to the date of filing of the original complaint. Viviano, 101 N.J. at 548; Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 120-23 (1973). To be entitled to the benefit of this rule, a plaintiff must proceed with due diligence in ascertaining the fictitiously identified defendant's true name and amending the complaint to correctly identify that defendant. Farrell, 62 N.J. at 120; Johnston v. Muhlenberg Reg'l Med. Ctr., 326 N.J. Super. 203, 208 (App. Div. 1999). In determining whether a plaintiff has acted with due diligence in substituting the true name of a fictitiously identified defendant, a crucial factor is whether the defendant has been prejudiced by the delay in its identification as a potentially liable party and service of the amended complaint. Farrell, 62 N.J. at 122-23.

[Claypotch v. Heller, Inc., 360 N.J. Super. 472, 479-80 (App. Div. 2003).]

. . . An amendment changing the party against whom a claim is asserted relates back if the [the claim asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading] . . . and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning

> the identity of the proper party, the action would have been brought against the party to be brought in by amendment.
>
> [Rule 4:9-3.]

We discern no error in the decision to dismiss Grand Chester. Plaintiff's accident occurred in February 2016, she filed her complaint in May 2017, and did not amend the complaint to name Grand Chester until June 27, 2018. This was not a situation where "defendant's true name [could not] be ascertained by the exercise of due diligence prior to filing the complaint." Claypotch, 360 N.J. Super. at 479-80. Plaintiff knew Grand Chester's possible connection to the incident in February 2016 when counsel corresponded with it, advising of the accident, asking it to identify its insurance carrier, and requesting video surveillance evidence. For these reasons, we also reject plaintiff's argument that Drayton intentionally delayed her discovery of Grand Chester's involvement. We agree with the motion judge, plaintiff did not demonstrate diligence in identifying Grand Chester prior to the expiration of the statute of limitations.

Plaintiff also lacked diligence in identifying Other Side. Other Side's identity was revealed in Grand Chester's July 2018 motion papers, yet plaintiff failed to name Other Side until December 13, 2018. Furthermore, there is no

evidence in the record that Other Side had notice of plaintiff's incident or the lawsuit.

We reject plaintiff's argument that the motion to dismiss should have been denied because Other Side and Grand Chester failed to demonstrate they were prejudiced by the delay in naming them. Plaintiff was not diligent in identifying and naming both Grand Chester and Other Side before filing the complaint or before the expiration of the statute of limitations. See Baez v. Paulo, 453 N.J. Super. 422, 444 n.10 (App. Div. 2018) ("[A]s illustrated by the Court's omission of a discussion of prejudice in its more recent opinion in Matynska, sometimes a plaintiff's lack of due diligence in omitting a defendant is sufficiently clear so as to render an analysis of actual prejudice unnecessary.").

Finally, we reject plaintiff's argument that Drayton and Active did not refute the tax assessor's records, which proved ownership of the lot and therefore thwarted summary judgment in their favor. As the motion judge found, neither the discovery plaintiff obtained, nor the tax assessment records established which part of the lot Drayton owned, and did not aid him in determining whether it owned the portion of the lot where plaintiff fell. The judge could not reach plaintiff's argument regarding the duty Drayton or Active owed to invitees without plaintiff first hurdling the issue of ownership.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13